148 So.2d 83 (1962)
DeFRANCES MARBLE AND TILE COMPANY
v.
John Marshall COXE et al.
No. 5649.
Court of Appeal of Louisiana, First Circuit.
November 9, 1962.
Rehearing Denied December 14, 1962.
Certiorari Denied March 12, 1963.
*84 Cole, Mengis & Fazio by Warren L. Mengis, Breazeale, Sachse & Wilson by H. P. Breazeale, Jr., Baton Rouge, for appellant.
Drury, Lozes & Dodge by James H. Drury, New Orleans, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
HERGET, Judge.
Plaintiff, DeFrances Marble and Tile Company, instituted suit against John Marshall Coxe, a building contractor; John David, Incorporated, the record title owner of a shopping center constructed by said contractor; Employers Liability Assurance Corporation, Ltd., the surety on a bond given by the contractor in accordance with LSA-R.S. 9:4801 et seq.; Connecticut Mutual Life Insurance Company and Edward M. Heller, holders of promissory notes secured by first and second mortgages on the shopping center. Plaintiff seeks judgment in its favor against John M. Coxe, John David, Incorporated and Employers Liability Assurance Corporation, in solido, in the sum of $24,222.59, with 5% interest thereon from May 1, 1959 until paid and the further sum of $24 representing the cost of recording a lien, together with all costs of court. In addition thereto, Plaintiff prayed that its privilege upon the land and improvements described in the petition be recognized and that it be paid the sum sued for out of the proceeds of the sale of said property in preference and priority over all other creditors of said Defendants, particularly but not exclusively the Connecticut Mutual Life Insurance Company and Edward M. Heller. John Marshall Coxe and John David, Incorporated answered, making a general denial and further setting forth the contract was duly accepted after the completion of the work and prayed that the suit of Plaintiff be dismissed at its costs. Employers Liability Assurance Corporation, Ltd., answered admitting the execution of the surety bond, denying it was indebted unto the Plaintiff in any amount whatsoever, and prayed for a dismissal of Plaintiff's suit as to it, and, in addition, filed exceptions of no right and no cause of action and a plea of prescription. Connecticut Mutual Life Insurance Company and Paul Odom, allegedly successor in interest of Edward M. Hellerthe said Odom having purchased the note from Heller answered, averring they were the holders and owners of the first and second mortgages on the property and prayed that the suit of Plaintiff be dismissed as to said appearers and that judgment be rendered recognizing respondents as the first and second mortgagees on the real estate involved. In addition, said Respondents filed a plea of prescription in this Court.
For oral reasons assigned the trial Court rendered judgment sustaining the exceptions of no right or cause of action and maintaining the plea of prescription filed by Employers Liability Assurance Corporation, Ltd., dismissing Plaintiff's suit at its costs as to said Defendant. The Court further ordered there be judgment in favor of DeFrances Marble and Tile Company and against John Marshall Coxe and John David, Incorporated, in solido, in the sum of $24,222.59 with 5% per annum interest from May 1, 1959 until paid and for the additional sum of $24, with recognition of Plaintiff's lien and privilege upon the land and improvements described in the petition; ordering the sale of the property and decreeing that Plaintiff be paid out of the proceeds thereof by preference and priority over all other creditors of said Defendants, particularly but not exclusively the Connecticut Life Insurance Company and Edward M. Heller. From this judgment DeFrances Marble and Tile Company devolutively appealed to this Court, as did Connecticut Mutual Life Insurance Company and Paul Odom.
The evidence reveals John M. Coxe, representing himself to be the owner of the land on which the building was erected, contracted with Plaintiff by verbal contract *85 to furnish and install Acoustiglas, Asphalt tile, Vinyl Asbestos tile, wall covering and other tile work itemized on the account annexed to the petition for $26,297.59, of which sum there was paid $2,075 leaving a balance due and owing of $24,222.59. At the time of these negotiations with Plaintiff, Coxe was the owner of the land. Subsequently, without the knowledge of Plaintiff and in compliance with a request from the lending agency which was to furnish interim financing for the project, Mr. Coxe formed a family corporation, John David, Incorporated, transferring title to the land to said corporation and entered into a building contract with it for the construction of a shopping center. Defendant, Employers Liability Assurance Corporation, Ltd. executed a surety bond guaranteeing the faithful performance of the contract by the contractor, John M. Coxe, not on a printed form but individually prepared on a typewriter. Plaintiff alleged under his subcontract work was begun on May 2, 1958 and continued through March 31, 1959; that the contract for the improvements on the property between Coxe, contractor, and John David, Inc., the owner, was recorded in the office of the Clerk and Recorder in the Parish of Livingston on February 6, 1958; that despite the fact its work was not completed until March 31, 1959 an acceptance of the contract undertaken by the contractor was filed by John David, Inc. on September 6, 1958 in the Parish of Livingston in Mortgage Book 45, page 554; that it filed a lien for the work it did under the contract against John M. Coxe, as owner, recorded May 14, 1959 and filed a supplemental and amended lien affidavit which joined John David, Inc., recorded in the records of the Parish of Livingston in Mortgage Book 48, page 13 on June 10, 1959. Plaintiff avers further that the owner's acceptance of the building referred to was null and void for the reason the contract had not been completed and the acceptance by defendant John David, Inc. was filed to defraud and deceive the laborers, materialmen and subcontractors who had performed work on the improvements on the property or had furnished materials for use therein and such acceptance was filed prior to the completion of work on the building with full knowledge of defendants John David, Inc., John Marshall Coxe and Employers Liability Assurance Corporation, Ltd. However, it was stipulated on the trial of the case that Plaintiff in no way charged Employers with any fraud in connection with the acceptance. Though the proceedings were not made part of this record, subsequent to the institution of this suit Mr. H. Paul Odom, who had purchased the note from Mr. Heller secured by mortgage on the commercial development involved herein, instituted foreclosure proceedings when the maker defaulted in his payments. When the foreclosure sale took place he secured a mortgage certificate from the mortgage office of the Clerk of Court in Livingston Parish, which certificate revealed the judgment of DeFrances primed both the mortgage foreclosed on and the mortgage of Connecticut Mutual Life Insurance Company. The Sheriff of the Parish of Livingston would not issue the Sheriff's Deed in connection with the foreclosure sale to the purchaser, Mr. Odom, the successful bidder at the Sheriff's sale, until the purchaser paid the Sheriff sufficient funds required by law to pay costs, commissions, and judgments which primed the mortgage foreclosed on.
Counsel for DeFrances contend because the lien which formed the basis for this lawsuit has been paid and canceled the issues raised by the appeals from the judgment are now moot. Though in this contention counsel for Employers concur, we are not in agreement therewith. As noted, the appeals were taken from a judgment recognizing the claim of Plaintiff as to certain defendants; rejecting same as to Employers; and further recognizing the claim of Plaintiff primed those of defendant mortgage holders, Odom and Connecticut. The *86 devolutive appeals by Connecticut and Odom were timely taken, security as required by law furnished and in no respect do counsel maintain the appeals were not properly taken. There is no question but that this Court has jurisdiction to determine the issues presented by said appeals. Appellants have not abandoned their appeals. On the contrary, counsel made forceful oral arguments and filed written briefs in support thereof. LSA-C.C.P. Article 2082 et seq. provide for the exercise by a party of the right of appeal from a judgment of a trial court to have same revised, modified, set aside or reversed by an appellate court and provide the procedure to effect the appeal, the jurisdiction of the trial court being divested and jurisdiction vested in the appellate court upon the perfection of such appeal.
Under LSA-C.C.P. Article 2085:
"An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment."
There is no basis whatever for reasoning that appellant Odom could be said to have voluntarily and unconditionally acquiesced in the judgment rendered by the trial Court in this case wherein the claim of Plaintiff was recognized as superior and primed the mortgage securing his note, when, to obtain title to said property by Sheriff's Deed in the foreclosure suit filed by him, he was required by the Sheriff to pay said lien in accordance with the judgment therein. It was essential and necessary, to protect his investment, that he obtain title to the development as the property securing his note was deteriorating and continuing to deteriorate because of lack of management. This was not a voluntary payment or acquiescence in the judgment, it being the law that not only must there be a voluntary acquiescence in the judgment rendered against the party appealing before his appeal can be dismissed but he must also have intended to abandon his right. Sanderson v. Frost, 198 La. 295, 3 So.2d 626; Jackson v. Michie, 33 La.Ann. 723; Harnischfeger Corp. v. C. W. Greeson Co., 219 La. 546, 53 So.2d 488; Scott v. Scott, 218 La. 211, 48 So.2d 899; Morgan City Company v. Guarisco, La. App., 116 So.2d 864 and the cases cited therein. Accordingly, the appeals do not present moot questions.
The issues to be determined on these appeals are: (1) (a) whether the trial Court was correct in giving validity to the lien filed by Plaintiff in connection with the claim asserted herein, and (b) whether said lien primed that of the mortgage holders; and (2) whether the judgment was correct in maintaining the exceptions of defendant Employers and rejecting Plaintiff's claim against it.
LSA-R.S. 9:4801 et seq. provide for the method, procedure to be followed, delays allowed to an artisan or material supplier on a contract for the erection of a private structure and therein provide for the recordation of the bond furnished by the surety to the contractor. It is provided in said statutes that where a building contract has been reduced to writing, bond furnished, materials supplied or work performed thereunder, the filing of an unpaid claim in accordance with said statutes creates a privilege on the land and improvements. Specifically LSA-R.S. 9:4802 provides the delay within which to file privileges and claims under said section shall not begin to run until the date of the registry of the acceptance by the owner or registry of the notice of default. And it is further provided the recordation of such claims shall be made not later than thirty days after registry in the office of the Clerk and Recorder of Mortgages of the notice of acceptance of said work by the owner. These are the requirements of the law essential *87 for the granting of a privilege to the artisan or supplier of materials where the contract for the undertaking is reduced to writing, surety bond given therefor and recorded in the office of the Clerk and Recorder. Under LSA-R.S. 9:4812 where the owner undertakes work without making a written contract, or where, if in writing it is not recorded, the artisan or furnisher of materials is permitted to obtain a lien and privilege on the property if proper claim is made and recorded within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same. Thus, as the contract for the commercial development involved herein was in writing, was duly recorded, a surety bond was furnished, Plaintiff was restricted to a period of thirty days from the date of the registry of acceptance of the contract by the owner to record its lien. Even though the acceptance of the contract by the owner in this case was done fraudulently inasmuch as in truth and in fact the work undertaken by Plaintiff was far from complete at the time of such acceptance and was not completed until some months thereafter, Plaintiff had not recorded its lien within the thirty day period for it knew nothing of the acceptance of the contract by the ownerand there is no question but that its work was a part of the contractas to third parties such as the mortgage holders in this instance who relied solely on mortgage certificates from the Clerk of Court and Recorder of Mortgages as to the encumbrances affecting the property, Plaintiff's lien did not appear thereon and they had no notice of such unrecorded encumbrance. We observe even had Plaintiff known of the acceptance filed by the owner, it would not have been able to file a lien for the balance due on its contract for the statute requires that the affidavit of claimant and lienor set forth that the claim represents work actually performed and as its contract was far from complete, no such representations could truthfully be made. Conceivably had Plaintiff known of the acceptance filed by the owner it could have instituted suit to strike from the records of the Clerk such acceptance as being premature and same could not deprive it of the right to file its lien timely after the completion of its subcontract. However, as such was not done, liens and privileges do not exist unless expressly created by statute, equitable privileges being unknown in Louisiana, privileges are stricti juris and the laws providing for their creation are strictly construed. There being no fraud charged to Odom and Connecticut, they were not required to look other than to the records of the Clerk and Recorder and upon obtaining certificates of mortgages more than thirty days after the date of the acceptance of the contract by the owner, the claim asserted by Plaintiff recorded more than thirty days after such acceptance did not create a privilege in favor of Plaintiff on the property and did not prime the mortgages obtained by appellants.
Accordingly, the judgment of the trial Court recognizing such lien of Plaintiff and giving same priority over appellants' mortgages is reversed.
It having been stipulated by counsel that there was no fraud on the part of Employers in the acceptance of the contract by the owner, the bond furnished in connection with its contract with Coxe being statutory, counsel for Employers in a very forceful and persuasive brief maintain action thereon could only be taken by Plaintiff on suit filed within one year from the date of the filing of the acceptance of the work under the contract, relying on LSA-R.S. 9:4814 reading:
"Nothing in this Sub-part shall be so construed as to deprive any claimant of his right of action against the surety signing any bond furnished in connection with any building contract or subcontract, or against the principal obligor thereunder, which right of action against such obligor and the said surety shall accrue at any time after maturity of the claim of the said claimant. *88 Before any suit is instituted against the surety prior to the registry by the owner of his acceptance of the work, or of the notice of default, such claimant shall record his claim as provided in R.S. 9:4802, and shall serve a copy of the said claim, in the form and in the manner prescribed in R.S. 9:4802, on both the owner and the surety and provided that no suit shall be filed against the surety until thirty days after such service. Any action against the surety must be brought within one year from the registry of acceptance of the work or of notice of default of the contractor. When claimants shall not have preserved their privileges and shall afterwards bring a direct action against the surety, they shall have priority as between themselves after payment of all recorded claims against the balance for which the surety is liable in the order of the filing of their respective suits."
Admittedly Plaintiff's suit was not brought within one year from the date of registry of the notice of acceptance by the owner but same was filed well within the two year period provided in the bond. Counsel earnestly contendsthough the bond which was executed by the surety in this case and as previously noted was not on a printed form but was individually typed provided: "No suit, action or proceeding by reason of any default whatever shall be brought on this bond after two years from the date on which the final payment under the contract falls due."the jurisprudence has been settled in Louisiana that the bond given under such statute can neither enlarge nor diminish the conditions required thereby and that whatever is written in the bond not required by the statute must be read out of the bond and whatever is not expressed in it but which ought to have been incorporated must be read into it, citing Electrical Supply Co. v. Eugene Freeman, Inc., 178 La. 741, 152 So. 510 and cases therein cited; Globe Indemnity Company v. Aetna Casualty & Surety Co., 193 La. 721, 192 So. 234; Long Bell Lumber Co. v. S. D. Carr Const. Co., 172 La. 182, 133 So. 438. (Emphasis supplied.)
There is no statute in Louisiana making it mandatory that a private owner enter into a written building contract, record same and furnish bond to construct an edifice. The law simply provides that where such contract is in writing, duly recorded and bond furnished, a lien or privilege is granted to a furnisher of material who asserts his claim properly and timely, and further, under said statute, the legislature has seen fit to give a claimant a right of action against the surety, provided suit is brought within one year from the date of registry of acceptance by the owner or date of notice of default. There is no public policy which prohibits the surety company from voluntarily contracting to pay claims of unpaid workmen or furnishers of supplies more than one year or as in this case specifically within two years from the date of the furnishing of such material or performance of work. Accordingly, the recorded stipulation voluntarily by Employers placed in its bond, thereby publicly notifying such suppliers of materials or artisans of its agreement to pay any such unpaid claims within a period of two years is a conventional obligation assumed by it giving to such claimants a direct action on the bond for the assertion of such claims and is in no way dependent upon the statutory requirement restricting the assertion of such claims to one year.
For these reasons, judgment is rendered ordering Plaintiff to return to the Sheriff of the Parish of Livingston the sum of $24,222.59 together with interest and the additional sum of $24 and costs paid to Plaintiff by the said Sheriff in the foreclosure proceeding, and it is further ordered that said Sheriff pay said sum to H. Paul Odom.
As the verity of Plaintiff's claim was admittedly proven and no issue is made of the quantum, it is further ordered, adjudged and decreed that there be judgment herein *89 in favor of plaintiff, DeFrances Marble and Tile Company and against defendant, Employers Liability Assurance Corporation, Ltd., in the full and true sum of $24,222.59 together with interest at the rate of 5% per annum from May 1, 1959 until paid and for the additional sum of $24, together with all costs.
Reversed and rendered.