904 So.2d 57 (2005)
FINOVA CAPITAL CORPORATION, Plaintiff-Appellant
v.
SHORT'S PHARMACY, INC., and Martha Womack, Defendant-Appellee.
No. 39,642-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 2005.
Rehearing Denied June 23, 2005.
King, Leblanc & Bland, PLLC by Robert J. Burvant, New Orleans, Smith, Debnam, Narron, Wyche, Saintsing & Myers, by Byron L. Saintsin, for Appellant.
Cotton, Bolton, Hoychick & Doughty, LLP by John B. Hoychick, Rayville, for Appellee.
Before STEWART, MOORE and LOLLEY, JJ.
MOORE, J.
The plaintiff, FINOVA Capital Corp. ("FINOVA") filed suit against Short's Pharmacy, Inc. ("Short's") and its guarantor, Martha Womack ("Womack") on November 7, 2002. Womack answered alleging that she is not personally liable on the guaranty. Short's is out of business and *58 its registered agent for service of process is deceased. It was never served. FINOVA moved for summary judgment, while Short's and Womack filed an exception of prescription. The court denied FINOVA's motion for summary judgment and sustained the exception. FINOVA appeals the granting of the exception. For the reasons that follow, we affirm.

Facts
This appeal involves the question of whether FINOVA's cause of action for the breach of an equipment lease/financing agreement has prescribed. The plaintiff, FINOVA, is a successor in interest to Recomm International Display, Ltd. ("Recomm"). FINOVA financed the equipment lease between Short's (lessee) and Recomm (lessor). The equipment subject to the lease/purchase was an electronic display board known as the Vox Apothecary, which was used as an advertising device/sign in a drug store. Short's Pharmacy was just one of several thousand lessees of Recomm and affiliated companies that leased these display boards. The term of the equipment lease between Recomm and Short's was 48 months beginning on the date signed, December 12, 1994. Womack signed the lease for Short's as its president, and also signed a personal guaranty of the lease at the bottom of the lease agreement. The language of this personal guaranty is attached to this opinion as Appendix "A". The lease called for 48 monthly payments of $316.09 with a first payment of $325.04 for a total amount of $15,497.36.
Paragraph 18 of the "plain language" lease states, among other things, that the lessee agrees that "this lease is a `Finance Lease' under Article 2A of the Uniform Commercial Code...." This is important because the trial court determined that this provision provided the choice of law and applied UCC 2A (Leases) to the case. Paragraph 12 of the lease states that "[i]f you do not pay rent when it is due ... you will be in default."
Short's stopped paying the lease in August of 1995, less than one year after the lease term began. A few months later, in January 1996, Recomm filed for bankruptcy in U.S. Bankruptcy Court for the Middle District of Florida in a matter styled In re Optical Technologies, Inc. The bankruptcy court issued an injunction in March of 1996 prohibiting all lessors and lessees from pursuing claims in court against one another. FINOVA claims that because it was prohibited from filing suit, any prescriptive period for an action to collect past due rent was "tolled" or suspended at that time.[1]
The bankruptcy court issued a Confirmation Order on May 13, 1998, effective June 30, 1998, that lifted the injunction and approved a reorganization plan known as the "Fourth Amended Joint Plan of Reorganization" ("Plan"). The Plan modified the terms of the subject lease in various ways discussed herein. FINOVA contends that Short's and Ms. Womack, who never responded to FINOVA's notices or correspondence regarding the plan, are subject to this confirmation order and deemed to have selected certain options under the Plan modifying the terms of the original lease, the most important of which is the alleged extension of the lease by 63 months from the "effective date" of the confirmation order, i.e., June 30, 1998. FINOVA also alleged that the confirmation order released FINOVA from any claims or defenses that might have been *59 raised regarding the lease and prohibited lessees from raising any claims or defenses, including prescription, for matters arising prior to June 30, 1998. In short, FINOVA contends that the bankruptcy Plan reconducted the original lease (which would have run its entire 48-month term at the end of 1998) beginning June 30, 1998, with new payment terms including an adjusted principal balance to be paid in 63 monthly installments unless Short's or Ms. Womack paid the entire balance within 30 days.
The defendants never participated in the bankruptcy proceedings or communicated with FINOVA, nor did it respond to FINOVA's letters regarding the actions of the bankruptcy court. FINOVA sent a notice of default on February 27, 2001 and filed suit on November 7, 2002 for past and future payments under the terms of the lease, allegedly exercising the option to accelerate the future payments of the lease under a still extant provision of the old lease.
FINOVA subsequently moved for summary judgment based upon the defendant's breach of contract. The defendants filed an exception of prescription on grounds that four years have passed since the last payment of the lease.
The trial court granted the exception for the following reason:
By its own terms, the lease is governed by UCC-2(A). Article 2(A)  506(1) of the UCC says that an action for default under a lease contract must be commenced within four years after the cause of action accrued. Article 2(A)-506(2) says a cause of action accrues when the act or omission on which the default is based ... occurs or is discovered, whichever is later. The rent agreement in this case says that "if you do not pay the rent, you are in default." Accordingly, the prescriptive period began in August of 1995 and expired in August of 1999, more than three years before suit was filed.
The district court further concluded that, even if the bankruptcy stay was effective, because the stay was lifted in June of 1998, the claim has still prescribed because suit was not filed until November of 2002, again more than four years after the defendant went into default. Defendant never paid any rent after the stay was lifted, so according to the lease, he was in default beginning in June of 1998. The claim would have prescribed in June of 2002, five months prior to suit.
FINOVA appealed the trial court's decision to this court.

Discussion
FINOVA first argues that the trial court erred in applying the four-year prescriptive period under UCC Article 2A. It contends that Louisiana's three-year prescriptive period applies and that prescription did not commence running unless and until it exercised its rights under the lease to accelerate the rent. Furthermore, FINOVA states that this suit is on the personal guaranty, not a suit on the lease. We will consider this last argument first.
In Louisiana, a contract of guaranty is equivalent to a contract of suretyship. Commercial Nat. Bank in Shreveport v. Pipe Sales of Shreveport, Inc., 23,619-CA (La.App. 2 Cir. 5/13/92), 600 So.2d 130, writ denied 92-C-1710 (La.9/25/92), 604 So.2d 1006. Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La. C.C. art. 3035. The surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert, except lack of capacity or discharge in bankruptcy of the principal obligor. La. C.C. art. 3046. The obligations of a surety *60 are extinguished by the different ways in which conventional obligations are extinguished and, further, by extinguishment of the principal obligation, prescription and termination of the suretyship. La. C.C. arts. 3058, 3059. Accordingly, even though the suit in this case is based on the obligations of the guaranty, the surety or guarantor may raise the exception of prescription of the principal obligation, that is, the lease, if the principal obligor or lessee could assert it. Thus, if Short's, the principal obligor of this finance lease, could raise a prescription argument, then Ms. Womack, as the surety or guarantor of the lease can also raise the prescription argument.
FINOVA also argues that prescription did not begin to run until it accelerated the lease installments and that the four-year period provided for in the contract does not apply because Paragraph 18 of the lease does not provide that UCC-2(A) is the choice of law. FINOVA thus contends that Louisiana's shorter three-year prescriptive period should apply in this case and other Louisiana case law regarding acceleration clauses in leases including commencement of the prescriptive period.
We agree with FINOVA that the applicable prescriptive period is three years. La. C.C. art. 3494. In Louisiana, it is well-settled that parties may not extend a period of prescription that is established by law. See E.L. Burns Co. v. Anthony Cashio, 302 So.2d 297 (La.1974). Any juridical act purporting to specify a longer period than that established by law is null. La. C.C. art. 3471.
FINOVA contends that the prescriptive period did not begin to run until FINOVA elected to exercise an optional acceleration clause of the lease. It cites the case of Starns v. Emmons, 538 So.2d 275 (La. 1989) for the proposition that the cause of action does not accrue until the termination of the lease, and a lease with an optional acceleration clause does not terminate until the lessor exercises its optional right to terminate the lease and accelerate the future rents due. Thus the central question in this case is whether the Short's/Recomm lease is subject to the modification of its terms under the Fourth Amended Joint Plan of Reorganization and whether that plan extends the term of the lease to the 62 months as provided in FINOVA's modification letter, where neither Short's nor Ms. Womack exercised any of the options specified in the modification letter.
Critical to FINOVA's claim is its contention that Short's failure to choose one of four options presented in a letter dated June 30, 1998 pursuant to the confirmation plan resulted in Short's being deemed to have chosen "Option 4," a so-called "extended payment opportunity" which set forth a payment schedule of 62 monthly payments of $265.00, plus one payment of $161.79. Incidentally, the sum of the payments totals $16,591, which is $5000 more than the pay-off balance of the lease, and an amount more than a thousand dollars more than the original amount to be paid on the lease/purchase. The term of the modified lease began anew on June 30, 1998. Except for the other terms modified under the Plan, in all other respects, the original lease terms remained intact.
Short's had been out of business since August of 1995, long before the confirmation order went into effect. It never responded to any letters from FINOVA or the bankruptcy court. Nevertheless, FINOVA contends that the Modified Lease agreement is in effect and enforceable against Short's and Ms. Womack.
We have reviewed the reorganization plan confirmed by the bankruptcy court and have made the following determinations *61 regarding its effect on the lease in question:
(1) We agree with FINOVA that the present lease is subject to the order of the bankruptcy court confirming the "Fourth Amended Joint Plan of Reorganization" (hereinafter "Plan");
(2) The confirmation order released FINOVA from any claims or defenses that might have been raised regarding the lease, and prohibited lessees from raising any claims or defenses for matters arising prior to June 30, 1998.
(3) That under the Plan, Short's and Ms. Womack are Participating Lessees, and FINOVA is a participating lessor as defined by the plan, and they are parties to a lease or claim under the classification of "Class C" as an advertising contract;
(4) That the Plan modified Class C leases in Section II. 3. b. (3)(a) through (h) by the following:
(a) adjusting the "effective balance," which is the balance due as of December 31, 1995, but discounting that balance by 6%;
(b) by reducing the original contract interest rate from 16% to 12%;
(c) by setting forth a formula that adds the adjusted effective balance of the lease to an adjusted remaining balance owed of the lease, the sum of which results in the Class C "revised principal balance" due on the lease;
(d) by giving any Participating Lessee the option to make a one-time pre-payment of the Class C "revised principal balance" within 30 days of the effective date, i.e., June 30, 1998, and thereby satisfy its obligations under the lease;
(e) by providing a formula for "revised monthly lease payments."[2] The formula provides that revised principal balance shall be divided by the sum of missed payments between January 1, 1996 and June 30, 1998 plus the number of payments remaining due on the original lease after June 30, 1998, with an option, "but not the obligation," to extend the term of the lease up to 60 months from the "effective date" of June 30, 1998 subject to the provisions of paragraph (f). Lessees are given 30 days to elect to extend the terms of their lease. If they fail to do so, then the lessee is "deemed not to extend such term." (Emphasis added).
(f) by providing that no monthly installment shall be less than $150. In cases where the formula in paragraph (e) results in an installment less than $150, the number of installments shall be reduced to the number of months necessary to raise the "revised monthly lease payments" to at least $150. On the other hand, if the revised monthly lease payment under paragraph (e) results in a monthly payment greater than $250, or for leases whose original installment more than $298.20, if the revised *62 monthly installment under paragraph (e) is greater than 83% of the original monthly installment, then the number of installments remaining on the lease shall be increased until the monthly installment is not greater than $250 or 83% of the original installment.
Paragraphs (e) and (f) are FINOVA's authority for its position that Short's failure to select one of the three options it presented in its June 30, 1998 letter to Short's resulted in Short's being "deemed to have selected Option 4" under the Plan, which extends the term of the lease to 62 installments from June 30, 1998. We read paragraph (e) to create a new installment plan option for the lessee to pay the Revised Principal Balance of the lease. The number of monthly installments is determined first by adding the number of months remaining on the lease after June 30, 1998 to the number of monthly installments not paid between January 1, 1996 and June 30, 1998. In this case, there were five monthly installments remaining on the lease, and Short's made no payments in the 30 months between January 1, 1996 and June 30, 1998, so the total number of installments was 35. This number excludes the number of installments missed prior to December 31, 1995, but not the arrears amounts for payments missed prior to that date which arrearage is added to the revised principal balance under the Plan.
This option has a proviso, however. The proviso is that Participating Lessees can also elect to extend the lease up to 60 months provided that the monthly installment payments do not fall below $150 or exceed $250 for each Vox Apothecary leased, as required by the next paragraph, subsection (f). This section further provides that if the original installment was in excess of $298.20, then the new maximum installment is calculated by taking 83% of the original monthly payment. In the instant case, the original monthly installment was $316.09, so 83% of that figure is $262.35.
Now, there is an apparent contradiction between the remainder of paragraph (e) and paragraph (f)'s ceilings on installment amounts. Paragraph (e) clearly provides that any extension of the installment term is at the option of the lessee within thirty days of the Effective Date (June 30, 1998), and, in the absence of an election, is deemed not to extend such term. (Emphasis supplied). The option to extend the installments out to 60 months is limited by paragraph (f).
Paragraph (f) provides that no monthly payment shall fall below $150 nor exceed $250 or 83% of the prior monthly installment. If either occurs, then the number of installments shall be decreased to raise the installment amount to at least $150 or the number of installments increased to lower the installment amount to $250 or 83% of the prior monthly installment. FINOVA contends that to comply with subsection (e) and subsection (f), the number of monthly installments of Short's lease was extended to 62 monthly payments of $265.00 per month and one payment of $161.79, and this extension is a part of the modified terms of the lease.[3] In other words, FINOVA interprets paragraph (f) to extend both installment options in (e) in this case in order to comply with the maximum monthly payment rule of (f).
*63 Turning now to the June 30, 1998 letter to Short's, FINOVA provided Short's with the following three payment options:
(1) Lump Sum: Pay the Revised Principal Balance, Effective Date Arrearage and any applicable sales tax in one lump sum to satisfy the Lease in full.
(2) & (3) Not Applicable.
(4) Pay Over Time: Spread Revised Principal Balance, including the Effective Date Arrearage, over the current remaining term and pay any applicable sales tax.
(5) Pay Over Time (Extended): Spread Revised Principal Balance, including the Effective Date Arrearage, over 60 months for Display Boards or....
The letter provided an "Election Form" with instructions to select only one option, and further stated that the document must be received by July 30, 1998 for the lessees preference to be honored, and "[i]f we do not receive your response indicating your preference by that date, you will be deemed to have selected option 4." Option 4 was the 63-month extended payment option.
We agree with FINOVA that the Plan provided for that the lessee's revised principal balance would be paid in installments if the lessee did not elect to pay off the balance owed in one payment within 30 days. FINOVA's position is also that Short's revised principal balance and effective date arrearage resulted in payments greater than 83% of its original installment of 316.09, and therefore the number of installments had to be extended to 63 months to bring the payments down to $265.00.
The critical question, however, is when did prescription begin to run in this case. Short's failed to make any installment payments in the original lease since August of 1995, and under the terms of the lease, this constituted a default. The Injunction never enjoined FINOVA from collecting rent or sending invoices for rent under the lease agreement or exercising its option to accelerate the rent due under the lease agreement. Preliminary Injunction, par. 3, p. 6. FINOVA was temporarily enjoined from seeking judicial enforcement of the lease.
The Plan expressly states that the leases "shall be deemed modified" as of the effective date. Plan, Section II. 3. b. (3), (p. 20). It also states that lessees have the "option (but not the obligation) to extend the term of their leases up to 60 months" and "in the absence of an election, is deemed not to extend such term." Plan, Section II. 3. b. (3)(e), (p. 22).[4] In this instance, Short's selected no options because it had been out of business since August of 1995.
FINOVA was aware that Short's had failed to make a payment on the lease since 1995. Most importantly, Short's failed to select one of the options provided by the Plan by responding to FINOVA's letter selecting an option or by rendering one of the optional performances within 30 *64 days of the effective date as required by the Plan. Under these circumstances, we consider Short's failure to perform or respond to the options letter as a clear indication that it intended to repudiate the contract. Considering this and the past failure to perform, FINOVA was on notice that Short's did not intend to honor the contract in its entirety. We therefore conclude the prescription began to run on July 30, 1998, that is, thirty days after the effective date of the Plan.
Thus, while we largely agree with FINOVA regarding the mandatory modification of the terms of the contract under the bankruptcy Plan, we also conclude that FINOVA could not sit on its right to enforce the contract for another five years when, under the circumstances of this case, it clearly should have known that neither Short's nor Ms. Womack intended to honor any part of the modified lease agreement from the default date of July 30, 1998. FINOVA had three years from that notice to enforce its rights under the contract, including accelerating the lease payments, but it failed to do so. Accordingly, its claim has prescribed.

Conclusion
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal shall be borne by the appellant.
AFFIRMED.

Appendix A

PERSONAL GUARANTY
I irrevocably guaranty that the lessee will make all payments and pay all of the other charges required under this lease when they are due and will perform all other obligations under the lease fully and promptly. The guaranty shall be a guaranty of payment and performance and not of collection. I also agree that you may make other arrangements with the lessee and I will be responsible for those payments and other obligations. I will immediately pay in accordance with the default provisions of the lease all sums due under the original terms of the lease and will perform all other obligations of lessee under the lease. I waive any claims or rights to be a creditor of the lessee's bankruptcy estate which may arise as a result of its performance hereunder, and I waive my right to file a claim against the bankruptcy estate of the lessee for any sums paid by me to you in accordance with the terms of this guaranty. I will reimburse you for all the expenses you incur in enforcing any of your rights against the lessee or me, including attorney fees. If this is a corporate guaranty, it is authorized by the board of directors of the guaranteeing corporation. If this is a partnership guaranty, it is authorized under the partnership agreement. I AGREE THAT THIS GUARANTY SHALL BE SUBJECT TO THE TERMS AND CONDITIONS OF SECTION 17 OF THIS LEASE. THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF APPLICABLE JURISDICTION, AS DEFINED IN SECTION 17. I AGREE AND CONSENT THAT THE COURT OF THE STATE FOR THE COUNTY OF APPLICABLE JURISDICTION OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION IN THAT COUNTY OF APPLICABLE JURISDICTION SHALL HAVE JURISDICTION AND SHALL BE PROPER LOCATION FOR THE DETERMINATION OF DISPUTES ARISING UNDER THE LEASE. I agree and consent that you may serve me by registered or certified mail, which will be sufficient to obtain jurisdiction. I waive trial by jury in any action between us.
X s/s Les Hayhurst 12-12-94
Witness Signature Date
*65
X s/s Martha K. Womack, Pres 12-12-94
Personal Guarantor Signature, As Individual
Date

APPLICATION FOR REHEARING
Before STEWART, GASKINS, PEATROSS, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] For purposes of this case, it does not matter whether the common law term "tolled" means that prescription was "interrupted" or "suspended" during the bankruptcy stay order.
[2] Section II. D. 3. b. (3)(e) provides:

(e) The Class C Revised Principal Balance and the Revised Interest Rate shall be used to determine the "Revised Monthly Lease Payments" according to the number of payments remaining under the terms of the relevant Lease as of the Effective Date (including payments due but not made between January 1, 1996 and the Effective Date); provided, however, that (subject to Section II. D. 3. B. (3)(f) below) Participating Lessees with Advertising Contracts have the option (but not the obligation) to extend the term of their respective Leases up to 60 months from the Effective Date for purposes of determining the revised Monthly Lease Payment and payment schedule. Each of such Participating Lessees shall make the election to extend the term of its Lease (if such extension is available) within 30 days after the Effective Date, but in the absence of an election, is deemed not to extend such term.
[3] Paragraph (g) provided that the participating lessees would begin their installment payments on the date of the original contract in the month following June 30, 1998. Paragraph (h) simply stated that in all other respects the original terms of the lease remained in effect.
[4] Contrary to FINOVA's position, we read this provision to provide that the modified lease in this instance provided for 35 installments (being the number of unpaid installments remaining on the original lease after the effective date of the injunction). These monthly payments would be greater than $265.00 due to added interest. Short's would have the option, but not the obligation, to extend the installments up to 60 months provided that it meets the requirements of paragraph (f). In other words, we believe paragraph (f) only applied to the optional additional extended payments up to 60 months even though it purports to apply to all extended payment options. This difference in interpretation is of no consequence in this case.