62 So.3d 721 (2011)
Sherry Coleman TARANTO, Dean Coleman and William S. Coleman, Jr.
v.
LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION d/b/a Louisiana Citizens Coastal Plan.
No. 2010-C-0105.
Supreme Court of Louisiana.
March 15, 2011.
Rehearing Denied May 20, 2011.
*723 Bienvenu, Foster, Ryan & O'Bannon, Douglas Matthew Kleeman, John W. Waters, Jr., Kristin Grace Mosely-Jones, New Orleans, LA, Hailey, McNamara, Hall, Larmann & Papale, LLP, John Tilghman Culotta, Darren Albert Patin, Metairie, LA, for Applicant.
Richard Charles Trahant, Jack Edward Morris, Metairie, LA, Shearman-Denenea, John Henry Denenea, Jr., New Orleans, LA, for Respondent.
JOHNSON, Justice.[1]
We granted this writ application to determine whether the Plaintiffs' lawsuit, seeking damages from the Louisiana Citizens Property Insurance Corporation, that *724 was filed nearly three years after Hurricane Katrina, is prescribed. The Fourth Circuit Court of Appeal held that the prescriptive period was interrupted by a timely filed class action petition against the insurer, which included the Plaintiffs as putative class members. Taranto v. Louisiana Citizens Property Ins. Corp., 09-0413 (La. App. 4 Cir. 12/16/09), 28 So.3d 543. For the reasons that follow, we hold that despite the language of the LCPIC insurance policy, which mandated a one year suit limitation, the Plaintiffs' lawsuit was timely filed because prescription was suspended upon the timely filing of the pending class action suits, which included the Plaintiffs as putative class members.

FACTS AND PROCEDURAL HISTORY
On August 29, 2005, Hurricane Katrina completely devastated parts of New Orleans, Louisiana and the surrounding areas, and for the purpose of this case, the home of Sherry Coleman Taranto, Dean Coleman, and William S. Coleman, Sr. (hereinafter referred to as "Plaintiffs"), located at 25259 Chef Menteur Highway. In response to the extraordinary circumstances associated with Hurricanes Katrina and Rita, the Louisiana Legislature enacted House Bill 1289 and House Bill 1302, known as Acts 2006, Nos. 739[2] and 802, which extended the prescriptive period within which insureds were allowed an additional year to file certain claims under their insurance policies for losses incurred by the storms.[3] In May of 2006, the Louisiana Citizens Property Insurance Corporation ("LCPIC") unilaterally extended the period in which its insureds could file lawsuits concerning their Hurricane Katrina *725 damage to September 4, 2007. On June 27, 2008, the Plaintiffs filed a petition against their insurer, LCPIC, seeking payment of their policy limits and damages, including damages for emotional distress and mental anguish. The Plaintiffs alleged, in pertinent part, that (1) the Plaintiffs' property and home were covered by a policy of insurance issued by LCPIC; (2) the property was completely destroyed on August 29, 2005, as a result of Hurricane Katrina; (3) the Plaintiffs presented proof of loss and made demand for payment of the policy limits; and (4) LCPIC refused to pay the policy limits. In the Petition for Damages, the Plaintiffs argued that the LCPIC's internal operating manual, called "Louisiana Citizens Claims Program and Procedure Guide," from April 2005, included a ten (10) year time limitation to commence actions for first party losses.
In response, LCPIC filed an Exception of Prescription, arguing that the suit was not filed within one year of loss and that the extended period of prescription provided by legislation had also expired. The trial court granted the Defendant's Exception of Prescription and dismissed the Plaintiffs' claims with prejudice, finding that the Plaintiffs failed to timely file their suit despite the legislative enactment that extended the time to file. The trial court found that the Plaintiffs could not rely on LCPIC's operating manual because it contained a "typographical error indicating ten years to file litigation." The trial court held that the Plaintiffs could not have had a "meeting of the minds" regarding a ten-year suit limitation period when the Plaintiffs undisputably were not aware of the internal manual until they received it in discovery. Specifically, the trial court ruled that
the operating manual . . . was an in-house document that contained a typo. . . indicating ten years to file litigation. This Court finds that the Plaintiffs' insurance policy set forth a one-year prescriptive period for the filing of claims. In addition, the legislative enactment allowed additional time for parties to file suit related to Hurricane Katrina damage. As such, Plaintiff cannot rely on an internal document produced during discovery to expand the prescriptive period.
The court of appeal reversed the trial court's ruling, holding that the prescriptive period was interrupted by the timely filing of a class action against LCPIC in which the Plaintiffs were putative class members. In Pitts v. Louisiana Citizens Property Ins. Corp., 08-1024 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, writ denied, 09-286 (La.4/3/09), 6 So.3d 772, the Fourth Circuit held that under LSA-C.C.P. art. 596, the filing of class action suits against LCPIC, i.e., Buxton v. LCPIC, 06-8341, Civil District Court, Orleans Parish and Chalona v. LCPIC, 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, suspended or interrupted the running of prescription against Ms. Pitts' property damage claims since Ms. Pitts was found to be a putative class member when the original class action petitions were filed. In summary, that court determined that prescription was interrupted on August 25, 2006, as to all putative class members, including Ms. Pitts, who had not opted-out of the class.
LCPIC filed a writ of certiorari, and this Court granted the writ application. Taranto v. Louisiana Citizens Property Ins. Corp., 10-105 (La.4/16/10), 31 So.3d 1068.

DISCUSSION
The issue before this Court is whether the Plaintiffs' lawsuit had prescribed when it was filed after the expiration of the suit limitation period provided in the policy of insurance and after the expiration of the extended deadline enacted by the Louisiana *726 Legislature despite other pending class actions against LCPIC involving Hurricane Katrina claims, which purportedly included Plaintiffs as putative class members.
In reviewing a peremptory exception of prescription, the standard of review requires an appellate court to determine whether the trial court's finding of fact was manifestly erroneous. Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. Jurisprudence provides that statutes involving prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished. Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268, 1275. On the issue of prescription, the mover bears the burden of proving prescription. Pitts, supra. However, if the petition is prescribed on its face, then the burden of proof shifts to the Plaintiff to negate the presumption by establishing a suspension or interruption. Bailey, 891 So.2d at 1275.
There are two procedural devices used in Louisiana to bar valid substantive claims which have not been timely filed, namely prescription and peremption. Dozier v. Ingram Barge Co., 96-1370 (La. App. 4 Cir. 1/28/98), 706 So.2d 1064, 1066. According to our civilian tradition, prescription is defined as a means of acquiring real rights or of losing certain rights as the result of the passage of time. Marjorie Nieset Neufeld, Prescription and PeremptionThe 1982 Revision of the Louisiana Civil Code, 58 Tul. L.Rev. 593 (November 1983) (citing to Baudry-Lacantinerie & Tissier as well as Aubry & Rau).[4] The article suggests, in pertinent part:
Traditionally, prescription has been divided into two categories: acquisitive prescription . . . and liberative prescription, which is a mode of resisting a claim by virtue of the claimant's inaction over an established period of time. Accordingly, the Louisiana Civil Code of 1870 provided that "prescription is a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the conditions regulated by law."
Id. at 594-595.
In Cichirillo v. Avondale Industries, Inc., 04-C-2894, 04-C-2918 (La.11/29/05), 917 So.2d 424, this Court determined that the fundamental purpose of the prescription statutes is "to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof." According to the Louisiana Civil Code, there are only three forms of prescription: acquisitive, liberative, and prescription of nonuse. See LSA-C.C. art. 3445. This Court defines the term "liberative prescription" as a "period of time fixed by law for the exercise of a right." State ex. rel. Div. of Admin. v. McInnis Bros. Constr., 97-0742 (La.10/21/97), 701 So.2d 937, 939. The Civil Code states that "there is no prescription other than that established by legislation" and "prescription runs against all persons" unless an exception is established by legislation. LSA-C.C. arts. 3457, 3467.
Louisiana jurisprudence recognizes three theories upon which a Plaintiff may rely to establish that prescription has not run: suspension, interruption, and renunciation.[5]Marco Demma v. Automobile *727 Club Inter-Insurance Exchange, 08-2810 (La.6/26/09), 15 So.3d 95, 98. Although sometimes used interchangeably, the concepts of "interruption" and "suspension" are distinguishable. The Louisiana Civil Code article 3462 provides in pertinent part "[p]rescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue."[6] If prescription is interrupted, the time that has run is not counted, and prescription commences to run anew from the last day of interruption. LSA-C.C.art. 3466. Adams v. Stalder, 2006-0051 (La.App. 1 Cir. 3/17/06), 934 So.2d 722, 725. By contrast, if prescription is suspended, the period of suspension is not counted toward the accrual of prescription but the time that has previously run is counted. LSA-C.C. art. 3472. This Court has indicated:
An interruption of prescription resulting from the filing of suit continues as long as the suit is pending. LSA-C.C. art. 3463. The effect of interruption of prescription, as contrasted with suspension of prescription, is that the time that has run prior to the interruption is not counted; prescription commences to run anew from the last day of the interruption. LSA-C.C. art. 3466.
Cichirillo, 917 So.2d at 430.
Generally, the statutes (or the policy of insurance) provide a time period within which a particular cause of action must be filed, or be forever barred. See Lee R. Russ and Thomas F. Segalla, 16 Couch on Insurance 3d, § 234:1 (2005), p. 234-7. In an insurance lawsuit, the time period that a Plaintiff has to bring this action may be derived from either the general statutes of limitations or the terms of the particular insurance policy. Id. at 234-9. The purpose of the limitations of action is to "insure that claims are asserted within a reasonable time, . . . . [and] to insure that notice of claims are given to adverse parties in order to prevent fraudulent and stale claims from springing up at great distances of time and surprising the other party." Id. at 234-12.
Typically, prescription begins to run from the date of the loss. LSA-C.C. art. 3454. In this case, the Plaintiffs asserted that the insurance policy is a contract under LSA-C.C. art. 1906,[7] and that actions on contracts are regulated by the ten year prescription period provided by LSA-C.C. art. 3499. The Plaintiffs first argue that this claim may be brought within the ten year prescriptive period.
The Plaintiffs' policy of insurance includes the following provision:
CONDITIONS
* * * * *
11. Suit Against Us. No action can be brought unless the policy provisions have been complied with and *728 the action is started within one year after the date of loss.
Despite the general language which allows for ten (10) years to bring suit for breach of contract, the plain language of this policy indicates that the action expired one year after the date of loss.
Our courts have held in a claim for breach of contract, the insurance contract is limited by the clear and unambiguous terms of the policy. Louisiana Joint Underwriters of Audubon Ins. Co. v. Johnson, 2009-0336 (La.App. 4 Cir. 9/2/09), 20 So.3d 528, 531. In that case, the contract stated: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." Louisiana Civil Code Article 2047 provides that "[t]he words of a contract must be given their generally prevailing meaning." Insurers, like other individuals, are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994). In the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid. See LSA-R.S. 22:629(B). According to Couch on Insurance 3d, § 235.1, "a contractual provision fixing limitation periods which differ from the time fixed by general statutes of limitations is binding on the contracting parties and relieve the parties from both the general limitation statutes and their exceptions unless they are precluded by statute or public policy, or are unreasonable or unreasonably short." The contractual period in an insurance policy will "govern an action unless the contractual period of limitations is invalid as contrary to statute, invalid as unreasonable. . . ." Id. at 235-9.
In the present case, LCPIC argued that Louisiana Civil Code of Procedure Article 596 does not apply to the "contractual limitations" period at issue in this matter because it only applies to "liberative prescription." In support, LCPIC relied on Katz v. Allstate Insurance Co., 04-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, which held that the filing of a class action does not alter a valid contractual prescriptive period. Because a contractual limitation period is not fixed by law or established by legislation, Article 596 is inapplicable. Katz, 917 So.2d at 447. According to Lila, Inc. v. Underwriters At Lloyd's, London, 08-0681 (La.App. 4 Cir. 9/10/08), 994 So.2d 139, 147, the limitation cited in the insured's insurance policy is not subject to interruption or suspension, but rather is merely a contractual agreement not to toll prescription if the insured institutes legal action within the two year time frame.
LCPIC also argued that the passage of La. Acts 2006, No. 802 ("Act 802") did not change the contractual nature of the suit limitation provision in the Plaintiffs' policy. This is clearly set forth in Act 802, which states that "any suit not instituted within [the specified] time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later time." LCPIC reasoned that if "Act 802 somehow converted the contractual limitation period into a new legislatively-established deadline, this deadline would be peremptive and not subject to suspension under the Civil Code." LCPIC proposed that if there is a conflict between Act 802 and LSA-C.C.P. art. 596, it must be resolved in favor of applying Act 802 as the statute is specifically directed to the matter at issue.
LCPIC, and several amici who filed briefs in support of their position, argue that there are strong policy reasons supporting *729 the enforcement of the contractual suit limitation, expressly authorized by the Louisiana Insurance Code. See LSA-R.S. 22:868(B), formerly LSA-R.S. 22:629(A)(3) (2005). The public interest is served by permitting the insurer to limit the time of its exposure. LCPIC submitted that because the insurer's reserves must be sufficient to meet possible losses, a shorter period of exposure results in lower premium costs to the insured. LCPIC asserted that the stability of the insurance market depends upon this Court's adherence to jurisprudence mandating the application of unambiguous contractual provisions.
Jurisprudence suggests that prescription may be suspended by the filing of a class action suit. Eastin v. Entergy Corp., 07-212, p. 12 (La.App. 5 Cir. 10/16/07), 971 So.2d 374, 381. In American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the United States Supreme Court held that the filing of a class action suit "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." The Louisiana legislature codified the holding in Utah through LSA-C.C.P. 596, which provides:
Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, thirty days from the submission of that person's election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
LSA-C.C.P. art. 596. (Emphasis added).
Article 596 is "a special provision that prevents prescription from accruing against the claims of members of a putative class action until the propriety of the class action or the member's participation in the action is determinated." Galjour v. Bank One Equity Investors-Bidco, Inc., 05-1360, p. 4 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 721, quoting 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 4:12 (2008) ("Maraist & Lemmon").
Additionally, this Court has held that "since the class action is brought on behalf of all members of the class, its filing interrupts prescription as to the claims of all members of the class, whether they are noticed before or after the prescriptive delay has terminated." Williams v. State, 350 So.2d 131, 137 (La.1977). This Court noted that
A Louisiana court is thus authorized to provide for such reasonable notice . . . to identifiable members of a class sought to be represented in a class action as will entitle them to avail themselves of or to disclaim representation of their interests by the class action. This power should be exercised by a court in which a class action is properly filed, in order to effectuate both 1) the legislative intention that Louisiana courts hear and determine true class actions, with binding *730 judgment conclusively determining by a single action numerous claims, and also 2) the constitutional due process requirement that all members of the class so bound receive such notice as is appropriate under the circumstances of the pendency of the litigation, including an opportunity to opt out of the class asserted.
Id. at 138.
Jurisprudence has provided that the interruption or suspension of the statute of limitations ceases as soon as the district court denies class certification. Bordelon v. City of Alexandria, 02-48 (La.App. 3 Cir. 7/10/02), 822 So.2d 223, 227-228. At that point, class members have the choice to file an independent suit against the defendants. Id. at 228.
In Katz, supra, the Fourth Circuit court of appeal considered whether prescription on an insured's claim was suspended due to a class action lawsuit arising out of a hail storm. Allstate argued that Mr. Katz should not be able to claim the benefit of a class action "in which he never intended to participate" and that the insured's reliance upon LSA-C.C. art. 596 was "misplaced because the article makes no reference to limitations periods imposed as a matter of contract." The court concluded, without analysis, that "the filing of the class action did not alter the contractual prescriptive period that this court has heretofore held to be valid." Id., at 447. The rationale behind this ruling was stated in Judge Murray's concurrence, in which she wrote "a plaintiff who files an independent action before a determination on class certification has been made cannot benefit from the tolling of prescription applicable to putative class members." Judge Murray maintained that when Mr. Katz filed his suit before the determination on the class certification, he "effectively opted out of the class action." Id.
In Lila, supra, the court held that Ms. Lila's claim as a result of Hurricane Katrina, which was filed on October 8, 2007, had prescribed on it face as it was filed more than two years from the date of loss, as provided by the insurance policy and after both statutory extensions of time to file claims had expired. Thus, the court correctly held that the unconditional payment of a first party property claim did not constitute acknowledgment sufficient to interrupt prescription. Unlike the present case, there is no mention of a pending class action lawsuit by which Lila was a putative member, which was timely filed and may have suspended prescription.
In Woman's Hospital Foundation of Baton Rouge v. Billie Bolton, 05-2357 (La. App. 1 Cir. 12/28/06), 951 So.2d 1110, the court determined that when the patient, who was a putative member of the class action suit brought against the hospital, was dismissed from the class, the suspended prescriptive period began to run on her claim within thirty days of receiving notice of the dismissal pursuant to LSA-C.C.P. art. 596(A)(3). Upon receiving notice of the judgment of dismissal on July 24, 2001, Ms. Bolton failed to file suit until June 9, 2003. For this reason, the court correctly held that her suit was prescribed.
In Pitts, supra, Ms. Pitts' property was destroyed by Hurricane Katrina, and she filed suit claiming LCPIC's payments were "grossly inadequate." Prior to filing her petition for damages, she asserted her interest as a putative member of the class action suits timely filed on August 25, 2006, i.e., the Buxton and Chalona class action suits. The following events occurred in the above-mentioned class action lawsuits: on August 9, 2007, the trial court denied Buxton class certification due to a lack of demonstrated commonality; on January 25, 2008, the court restricted the Chalona class to exclude those whose *731 claims were "insufficiently paid;" and on April 24, 2008, notice was sent to those who were excluded from the Chalona class. Ms. Pitts was one of those insureds who was excluded from that class. Ms Pitts did not wait to receive notice of her exclusion before filing suit. Instead, she filed her Petition for Damages on February 20, 2008, which was well before the prescriptive period began to run again, according to LSA-C.C.P. art. 596. Ms. Pitts did not submit a form opting out of the respective classes and therefore, her claims were initially included in the Chalona class action. The court of appeal noted that it certified the Chalona class, excluded claims of inadequate payment pursuant to LSA-C.C.P. art. 596, and provided notice to those excluded putative class members, such as Ms. Pitts. This notice triggered the termination of the suspended prescriptive period. Article 596(A)(2) maintains that any person excluded from the class has thirty (30) days from the mailing of the notice on April 24, 2008 to file suit. Since, Ms. Pitts timely filed her individual petition on February 20, 2008, the court of appeal found that Ms. Pitts' claims had not prescribed. This Court denied the writ of certiorari. Pitts, supra.
In analyzing whether the Plaintiffs in this case timely filed their claims, we must consider the two class actions, Buxton and Chalona, which were timely filed on August 25, 2006, and whether the Plaintiffs are putative members of either class. The Buxton case sought a class definition as follows:
All present or past insureds of LOUISIANA CITIZENS FAIR PLAN who filed a claim for coverage benefits pursuant to their policy of insurance with LOUISIANA CITIZENS FAIR PLAN after August 29, 2005, and who have yet to have a proper loss adjustment of their property damage, and/or who have not been timely paid for their property damages after providing satisfactory proof of loss, pursuant to the time constraints allowed by law.
In the present case, the Plaintiffs' claims fall within the defined class.
On August 9, 2007, class certification was denied in Buxton, but there was no order entered requiring notice to the putative class. On January 25, 2008, the trial court restricted the Chalona class to exclude those "whose claims were insufficiently paid" and ordered on April 24, 2008, that notice be provided to all putative plaintiffs.[8] Once the Buxton class certification was denied, and the Chalona class was restricted to exclude plaintiffs whose claims were insufficiently paid, the Plaintiffs' claims in this case were no longer represented in the class action.[9]
Pursuant to LSA-C.C.P. art. 596, the liberative prescription that was suspended with the filing of the class action petition, commenced to run again thirty (30) days after publication of notice of the class restriction in Chalona, or on May 24, 2008. Once the prescriptive period began to run again, the Plaintiffs had only the time remaining under the applicable prescriptive period within which to file suit. LSA-C.C. *732 art. 3472. When the Chalona and Buxton petitions were filed, on August, 25, 2006, Acts 739 and 802 were already in effect. As a result, under the law in effect at the time suit was filed, the Plaintiffs had until September 1, 2007, to bring their claims. Since notice was provided to all Chalona putative members on April 24, 2008, then according to LSA-C.C.P. art. 596, the suspended period ended on May 24, 2008, and the prescription commenced to run anew. The Plaintiffs, who were putative members of the Chalona class action, had until May 31, 2009 to file suit. In this instance, Taranto and Coleman filed suit on June 27, 2008, and pursuant to LSA-C.C.P. art. 596, the suit was timely filed.
Given this timetable, LCPIC's claim that applying LSA-C.C.P. art. 596 would expose it to an indefinite period of liability on hurricane claims is exaggerated. There is a definite cut-off point to exposure. That point occurs after the prescriptive period pursuant to LSA-C.C.P. art. 596 begins to run anew and the Plaintiffs' remaining time under the applicable prescriptive period within which to file suit has expired.
We disagree with LCPIC's argument that the one year period in the insurance policy is a "contractual limitations" period and not a liberative prescriptive period subject to the suspension principles of LSA-C.C.P. art. 596. This holding would prevent all insureds from filing class actions against their insureds for breach of the insurance contract, unless the class action can be filed and a class certified, all within the one year limitations period, which is very unlikely. This ruling would have a limiting effect on the pending class actions involving Hurricane Katrina claims. Arguably, only the claims of the named plaintiffs in those class actions would be preserved because only actions by those named plaintiffs would have been "started within one year of the date of loss." Any other parties who relied upon the filing of the class actions to preserve their claims, instead of filing separate claims, would be subject to exceptions of prescription.
In sum, LCPIC claims the time limitation is contractual, not prescriptive, in nature and, therefore, not subject to the rules of prescription, i.e., suspension or interruption. Their position is flawed, however, in that, although parties to an insurance contract may by legislative pronouncement, limit the prescriptive period to one year, they may not, as a matter of law, contractually "opt out" of prescription, abrogate the prescriptive periods established by law, or divest said time limitations of their prescriptive nature. Therefore, as a one-year prescriptive period prescribed by law, the time limitation set forth in the policy is subject to the procedural rules of suspension of prescription.
Under Louisiana Civil Code article 3457, "[t]here is no prescription other than that established by legislation." LSA-C.C. art. 3471 provides: "[a] juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null." This provision is directed to the protection of interests vital to public order, i.e., the extinction of the charge against the debtor as a result of the creditor's inactivity, the prevention of litigation brought long after memories have dimmed and evidence has been lost, and sets forth an imperative rule, which, by law, "private individuals cannot set aside . . . by private agreement." See E.L. Burns Co., Inc. v. Cashio, 302 So.2d 297, 300 (La.1974); see also, LSA-C.C. art. 7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such *733 laws is an absolute nullity."). Therefore, by the very terms of this codal provision, parties may not contractually "opt out of" prescription, or make its requirements more onerous.
The decision in E.L. Burns is vitally important to an understanding of our principles of prescription as they stand today, because it is in this decision that a majority of this Court, lead by Justice Marcus, examines and strikes down a contractual limitation, or rather expansion of prescription, as violative of our codal provisions prohibiting the anticipatory renunciation of prescription. 302 So.2d at 301-302. In E.L. Burns, this Court analyzed whether the one-year prescriptive period of actions on the contractor's bond under the public contracts law may be extended by a surety bond contract. LSA-R.S. 38:2247 (1950)[10] Here, E.L. Burns contracted with the general contractor to erect covered walkways at two East Baton Rouge Parish Schools at the agreed upon price of $4,767.00. However, the general contractor paid only $2,000, causing E.L. Burns to file suit against the general contractor and his surety. The surety bond provided that "[a]ny suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment falls due." E.L. Burns filed suit more than a year after the recordation of acceptance by the school board, but within the two years from the date final payment was due. The Defendants filed an exception of prescription alleging a violation of LSA-R.S. 38:2247. The district court sustained the exception, and the court of appeal affirmed the district court's ruling. This Court noted that there are two methods to determine whether a statute is an imperative or suppletive rule:
The first is by an examination of the wording of the text. Simply stated, this view holds that, if the statute in question states its command in unequivocal terms and without exception, the rule there expressed is imperative. However, if the statute is merely directory or contains a proviso such as `unless otherwise stipulated' or `except as otherwise provided,' it states a suppletive rule of law that may be superseded by conventional agreement. The second method of interpretation, suggested by those with reservations about the consistency of legislative drafting, evaluates the content of the statute to determine whether the rule is directed to the protection of an interest vital to the public order. It has been suggested that proper technique requires consideration of both factors: the literal wording of the rule and the interest the rule was designed to protect.
Id. at 301 [Citations omitted.]
This Court held that the stipulation in the surety bond that suit may be brought within two years, "in contravention of the one-year prescription set forth in LSA-R.S. 38:2247, constitutes an anticipatory renunciation of prescription . . . and cannot be given effect." In a well-reasoned and well-supported dissent, Justice Tate, joined by Justice Calogero, advocated the freedom of contract and warned of the danger of "classifying any agreement limiting the time within which to sue under a contract as an agreement either to renounce prescription or somehow to limit it." 302 So.2d at 303.
*734 In reviewing the stipulation in LCPIC's policy of insurance, we find that this contractual limitation, which establishes a one-year liberative prescriptive period, merely adopts the Louisiana statutory prescriptive period to file claims. The parties are bound by the codal articles, and by a contractual agreement may not "opt out of" prescription, divest the limitation of its prescriptive nature, or make its requirements more onerous. Consequently, as a prescriptive period, the prescribed time limitation herein is subject to all the laws governing liberative prescription, particularly the suspension of such by the filing of a class action under La. C.C.P. art. 596.
In determining whether the contractual limitation/prescriptive period is one subject to the general statutory rules of interruption, suspension, we disagree with LCPIC's argument that in this case, the suit limitation period is determined by contract and not mandated by statute, and that the statutory rules for interruption and suspension of prescription are not applicable. In Tracy v. Queen City Fire Ins. Co., 132 La. 610, 614, 61 So. 687, 688 (1913), this Court noted that:
Where the law directly or indirectly prescribes a limitation of actions, in logic and reason, such limitation should be controlled and governed by the general provisions of the law relating to the subject. In all statutes of limitations, there are exceptions in favor of a certain class of persons, such as minors and interdicts, and provisions relating to the interruption of the current prescription by acknowledgment, judicial demand, etc. Where, as in the case at bar, the law prescribes the limitation, and the parties cannot help themselves, there is no good reason in law or in equity for not applying the general rules of prescription laid down by the Civil Code, one of which provides that citation shall interrupt prescription, "whether the suit has been brought before a court of competent jurisdiction or not." Article 3518.
In this case, the Louisiana Civil Code provides that an action on a contract is a personal action, subject to a liberative prescription of ten years. LSA-C.C. art. 3499. On the effective date of the policy at issue in this case, LSA-R.S. 22:629(A)(3) provided that no insurance contract issued for delivery in this state shall contain any stipulation: "[l]imiting right of action against the insurer to a period of less than twelve months next after the inception of the loss. . . ." In accordance with this provision, the insurance policy contains the following stipulation: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."
Based upon Tracy, we hold that the contractual stipulation in the LCPIC policy is actually one imposed by law, and not contract, and thus the laws with respect to interruption and suspension apply, including LSA-C.C.P. art. 596. This analysis equally applies to the one year extension of the limitations period LCPIC insists it "voluntarily" afforded to its policy holders. Such a conclusion is not inconsistent with former pronouncements of this Court. Indeed, in rejecting a contracts clause challenge to Acts 739 and 802, this Court specifically noted that the Louisiana insurance industry is pervasively regulated, and because the "minimum prescriptive period was already set by statute in the former R.S. 22:629 . . . . a change in the prescriptive period was a legal possibility." State v. All Property and Casualty Ins. Carriers, 06-2030 at p. 16, 937 So.2d at 325. This language supports our conclusion that the limitations period in the LCPIC policy is at least indirectly, if not directly, mandated by law. Therefore, it is *735 a statutory as opposed to purely contractual period.
Finally, we must resolve whether Acts 739 and 802, in extending the statutory and contractual prescriptive periods of insurance contracts in the wake of Hurricanes Katrina and Rita, are peremptive, and therefore not subject to interruption and suspension. LCPIC's argument on this point is not persuasive. There are two distinctions between prescription and peremption: (1) the tolling of peremption extinguishes the right sought to be exercised, whereas prescription merely limits the time within which one may exercise the right; and (2) peremption is not subject to renunciation, suspension or interruption, while prescription may be renounced, suspended or interrupted. See LSA-C.C. arts. 3458 and 3461; Naghi v. Brener, 08-2527 (La.6/26/09), 17 So.3d 919. "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." LSA-C.C. art. 3458. "Statutes of peremption destroy the cause of action." Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899, 901 (La.1900). In Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900), this Court held that the three-month period allowed for the filing of a suit to contest the validity of a property tax election was peremptive in nature:
When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost.
Act 802 declares that it "establishes an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer . . . ." (emphasis added). There is no conflict between Article 596, providing for suspension of prescription upon the filing of a class action, and Act 802, requiring suits on Hurricane Katrina insurance claims "to be filed on or before August 30, 2007 or be forever barred," so long as the class action suits were timely filed on or before August 30, 2007. The application of Article 596 to suspend the running of prescription against Katrina insurance claims timely asserted in class actions does not impair the obligations of any insurance contracts because the insurer has timely notice of the magnitude of all putative claims. Moreover, it provides that "any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date." (emphasis added). We reiterate that a peremptive period cannot be renounced, interrupted or suspended. Therefore, by definition, a time period that may be altered by contract or agreement of the parties cannot be a peremptive period.

CONCLUSION
For the foregoing reasons, we conclude that filing of a lawsuit designated as a class action pursuant to LSA-C.C.P. art. 591, suspends prescription for all members of the putative class until the district court has ruled on the motion to certify the class. When notice is given, pursuant to LSA-C.C.P. art. 596, the suspended prescription period begins to run again. Thus, we affirm the ruling of the court of appeal.
AFFIRMED.
*736 VICTORY, J., dissents and assigns reasons.
KNOLL, J., additionally concurs and assigns reasons.
WEIMER, J., concurs and assigns reasons.
GUIDRY, J., dissents and assigns reasons.
CLARK, J., concurs for reasons assigned by WEIMER, J.
VICTORY, J., dissenting.
I dissent from the majority's holding that the filing of a class action lawsuit suspended the contractual limitations period imposed by Louisiana Citizens Property Insurance Corporation's ("Citizens") insurance policy. In my view, La. C.C.P. art. 596 does not apply to a contractual limitations period because it expressly operates to only suspend "liberative prescription." The majority errs in holding otherwise for several reasons.
First, La. C.C. art. 3471 provides that "[a] juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null." The converse of that is that a contractual limitations period which does not do any of the above is enforceable. This Court has long recognized that concept. See Blanks v. Hibernia Ins. Co., 36 La. Ann. 602 (La.1884) ("[t]he validity and legality of stipulations in policies of insurance limiting the time within which actions for claims thereunder may be brought, have been affirmed by the [Louisiana Supreme] Court and by the Supreme Court of the United States") (citing Edson v. Merchants' Mut. Ins. Co., 35 La. Ann. 353 (La.1883); Riddlesbarger v. Hartford Insurance Co., 74 U.S. 386, 7 Wall. 386, 19 L.Ed. 257 (1868)). Further in State of Louisiana v. All Property and Casualty Ins. Carriers, 06-2030 (La.8/25/06), 937 So.2d 313, this Court recognized it was the time limitation in the insurance contracts at issue which governed the time period in which claimants must file suit (and thus we had to determine whether Acts 739 and 802 unconstitutionally violated these contractual time limitations). In addition, the relevant statutes recognize that parties to an insurance contract can set their own time periods for filing suit so long as the periods fall within a certain window. At the time of Katrina, Louisiana law prohibited insurers from including suit limitations periods shorter than 12 months, (La. R.S. 22:629(A)(3)(2005)), and prohibited parties from agreeing to a limitations period longer than the 10-year liberative prescription period. La. C.C. arts. 3471, 3499. La. R.S. 22:658.3 (now renumbered La. R.S. 22:1894) extended the period to September 1, 2007 unless a greater time period was otherwise provided by law or by contract. Here, Citizens extended the deadline to September 4, 2007, longer than the minimum period proscribed by law and shorter than the maximum period proscribed by law. In my view, where, as here, the contractual limitations period falls anywhere within the allowed window, i.e., between September 1, 2007 and the 10-year outer limit, it is valid under La. C.C. art. 3471 and enforceable as a contractual limitations period. See Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845 (1961) (where a contract fixes the length of a servitude within the time allowed by law, "no question of prescription arises because the servitude would expire by the terms of the contract before it could ever be lost by the 10-year prescription for non-user").
In addition, the majority errs in relying on All Property to support its holding. The main issue in All Property was a contracts clause violation wherein this *737 Court wrestled with the provisions of Acts 739 and 802 because their application violated the contractual freedom of insurance companies to include time periods within which claims had to be made under those contracts, as long as they did not reduce the period below one year. Ultimately, the Court upheld Acts 739 and 802 because the legislative incursion into the freedom of the parties to an insurance policy to contract for an applicable period of time within which claims were to be brought was "limited in both time and scope" and was being extended "for only one additional year." 937 So.2d at 327. The Court concluded that the legislative restriction on freedom of contract in this respect was "appropriate and reasonable in order to protect the rights of the citizens of Louisiana and their general welfare." Id. The Court rejected the notion that Acts 739 and 802 were unnecessary and that contra non valentem would suffice to remedy any problems in bring suit. The Court noted that contra non valentem applies on "an individual, case-by-case basis" and in order to avoid "mass confusion and an increase in filings in our courts," "the Legislature addressed this significant public concern in an appropriate manner" by passing legislation setting a rule that was both general and uniform. Id. at 327, n. 13.
In this case, the Court is being asked to apply a pre-existing general provision of the Code of Civil Procedure dealing with class actions to interrupt the time period an insurance company has validly included in its contract. Further, this provision would provide an even longer period of time for the legal prosecution of claims against insurance companies than the legislature provided in Acts 739 and 802. In addition, the suspension based on Article 596 is uncertain and would be applicable only on an individual, case-by-case basis, the two things the Court in All Property sought to avoid. All Property recognized that the legislature's desire for finality in stating these claims would be "forever barred" unless brought within the extended one-year period. Acts 739 and 802 were a special solution to a unique problem, and not meant to provide a new rule that contractual limitations could be suspended by Article 596.
Further, the majority opinion ignores the clear language of La. C.C.P. art. 596, which states "[l]iberative prescription" is suspended upon the filing of a class action in certain circumstances. It is well settled that "liberative prescription" is a "period of time fixed by law for the exercise of a right" and a contractual limitations period is not a time period fixed by law, it is fixed by agreement between the parties. Before this case and Pitts v. Louisiana Citizens Property Insurance Co., 08-1024 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, the Fourth Circuit had correctly held that the limitations period provided in an insurance policy is not a prescriptive period suspended by the provisions of Article 596. Katz v. Allstate Insurance Co., 04-1133 (La. App. 4 Cir. 2/2/05), 917 So.2d 443; see also Lila, Inc. v. Underwriters At Lloyd's, London, 08-0681 (La.App. 4 Cir. 9/10/08), 994 So.2d 139 (holding that a contractual limitations period is not a prescriptive period subject to interruption or suspension). Similarly, in a well-reasoned opinion by Judge Feldman of the Eastern District of Louisiana, the federal court held that the filing of a class action Katrina lawsuit does not extend the contractual limitations period in an insurance policy. Dixey v. Allstate Ins. Co., 681 F.Supp.2d 740 (E.D.La.1/8/10). The court stated its belief that this Court would likely limit the All Property decision to its narrow facts because to do otherwise would violate the clear language of Article 596 and "add a dimension that might detract from the certainty of [that] decision . . ." 681 *738 F.Supp.2d at 747, 748. I agree that we should have.
For the foregoing reasons, I respectfully dissent.
KNOLL, Justice, additionally concurring.
I am additionally concurring to further explain why I find the limitation provision at issue is prescriptive. I further concur addressing Citizens' contractual limitation under the Insurance Code and find the purported prescription shortening provision in the parties' contract did not meet the strict requirements of the Insurance Code, thus, Citizens cannot prevail under its contract theory.
Finding plaintiffs' lawsuit was timely filed because prescription[1] was suspended, in accordance with the provisions of La. Code Civ. Proc. art. 596, upon the timely filing of the class action petitions in Buxton v. Louisiana Citizens Property Ins. Corp. and Chalona v. Louisiana Citizens Property Ins. Corp., 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, of which classes plaintiffs were punitive members, I additionally concur on the prescriptive issue for the following reasons.
On June 27, 2008, plaintiffs filed their petition for damages against Citizens, alleging that, on August 29, 2005, the winds of Hurricane Katrina "completely destroyed" their home located at 25259 Chef Menteur Highway in New Orleans. Plaintiffs further alleged that Citizens insured the property and that they provided proof of loss to Citizens and made demand for payment, but "to no avail." In response, Citizens filed an "Exception of Prescription," citing the provision of the parties' insurance policy, which provided: "No action can be brought unless . . . the action is started within one year after the date of loss." Citizens also cited La.Rev.Stat. 22:658.3,[2] which extended "the prescription period to two (2) years." During the hearing on the exception, plaintiffs argued "because of the pending class action cases with Citizens under [La.Code Civ. Proc. art.] 596, there may be a suspension of prescription on some of those cases." The District Court sustained the exception, and the Court of Appeal, Fourth Circuit, reversed, finding the filing of the class actions in Buxton and Chalona interrupted prescription for all putative members, including the plaintiffs herein. Taranto v. Louisiana Citizens Property Ins. Corp., 09-0413, p. 6 (La.App. 4 Cir. 12/16/09), 28 So.3d 543, 548. Citizens sought review from this Court, arguing the appellate court committed legal error in concluding plaintiffs' suit was not time-barred under the contractual suit limitation provision in the insurance policy.
In so arguing, Citizens asserts the limitation provision at issue is contractual in *739 nature, not prescriptive, and therefore, not subject to our rules governing the tolling of prescription. Therein lies the fatal flaw in Citizens's proposition because, as more fully developed below, under the clear and explicit language of our Civil Code, parties as a matter of law cannot contractually "opt out" of prescription, abrogate the prescriptive periods established by law, or divest said time limitations of their prescriptive nature.

Contractual Limitation v. Liberative Prescription
Under our Civil Code as revised in 1982,[3] there are only three kinds of prescription: acquisitive prescription, liberative prescription, and prescription of non-use. La. Civ.Code art. 3445. Notably, "[t]here is no prescription other than that established by legislation." La. Civ.Code art. 3457. More significantly, "[a] juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null." La. Civ.Code art. 3471. This provision, by its unequivocal demand directed to the protection of interests vital to public order, i.e., the extinction of the charge against the debtor as a result of the creditor's inactivity and the prevention of litigation brought long after memories have dimmed and evidence has been lost, sets forth an imperative rule, which, by law, "private individuals cannot set aside . . . by private agreement." See E.L. Burns Co., Inc. v. Cashio, 302 So.2d 297, 300 (La.1974);[4]see *740 also, La. Civ.Code art. 7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity."). Therefore, by the very terms of this codal provision, a contract cannot exclude nor can parties contractually "opt out of" prescription or make its requirements more onerous.
At issue in this case is liberative prescription, which, by definition, "is a mode of barring of actions as a result of inaction for a period of time""a mode of extinguishing claims." La. Civ.Code art. 3447; La. Civ.Code art. 3447, Revision Comments1982, Cmt. (b). A personal action, such as one arising out of a contract, is subject to a liberative prescription of ten years in the absence of a legislative provision that either establishes a shorter or longer period or declares the action to be imprescriptible. La. Civ.Code art. 3499; see also La. Civ.Code Ann. art. 3499, Revision Comments-1983, Cmt. (b). Note, only a legislative provision can allow for the shortening or extending of a prescribed period because "[t]here is no prescription other than that established by legislation."[5]
The Insurance Code allows for the limiting/shortening of the applicable ten-year prescriptive period to no less than a one-year prescriptive period, specifically providing at the time of the issuance of the contract in issue:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
(3) Limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of *741 action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
B. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
La.Rev.Stat. § 22:629 (West 2005).
The insurance contract contained the following stipulation:[6]
Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.
This contractual limitation of the ten-year liberative prescriptive period to a one-year liberative prescriptive period does not and cannot destroy the prescriptive nature of the time limitation because a juridical act cannot exclude prescription, and it is only by legislative directive that the parties can contractually limit the prescribed period.[7] Therefore, as noted above, the parties by their contractual agreement could not "opt out of" prescription, divest the limitation of its prescriptive nature, or make its requirements more onerous. Consequently, as a prescriptive period, the prescribed time limitation herein is subject to all the laws governing liberative prescription.
In summary, under the clear and explicit language of our Civil Code, parties to a contract cannot exclude prescription, nor can they extend or shorten a prescribed period in the absence of a legislative provision directly allowing for such. Suits on contracts are subject to a ten-year prescriptive period, which the Insurance Code allows to be shorten to no less than a one-year *742 prescriptive period in certain insurance policies. In accordance therewith, the insurance policy at issue contains such a one-year limitation to the ten-year prescriptive period. As a one-year prescriptive period prescribed by law and extended to two years by legislative enactment, see State v. All Property and Casualty Ins. Carriers, 06-2030, p. 1 (La.8/25/06), 937 So.2d 313, 316, the time limitation set forth in the policy, therefore, is subject to the procedural rules of suspension of prescription, particularly the suspension of such by the filing of a class action under La.Code Civ. Proc. art. 596.

Suspension of Liberative Prescription
La.Code Civ. Proc. art. 596 specifically provides that liberative prescription is suspended on the filing of the "petition brought on behalf of a class ... as to all members of the class as defined or described therein." Relevant herein, the filing of the class action petitions in Buxton and Chalona[8] on August 25, 2006, suspended liberative prescription, including the one-year period prescribed in the Insurance Code as well as the newly enacted two-year prescriptive period,[9] "as to all members of the class as defined or described" in the petitions, within which defined classes plaintiffs herein would have fallen. See La.Code Civ. Proc. art. 596. That suspension continued until "thirty days after mailing or other delivery or publication of a notice" to the members that "the class ha[d] been restricted or otherwise redefined so as to exclude" certain members, see La.Code Civ. Proc. art. 596(2), or "that the action ha[d] been dismissed," see La.Code Civ. Proc. art. 596(3).
Pertinently, Buxton was denied class certification on August 9, 2007, but no order to notify the class was issued. The Chalona class was restricted to exclude those members "whose claims were insufficiently paid," i.e., plaintiffs herein, on January 25, 2008, but the order to notify all putative plaintiffs was not issued until April 24, 2008. Therefore, suspension continued as to the plaintiffs herein until May 24, 2008, at which time prescription commenced to run again. La.Code Civ. Proc. art. 596; La. Civ.Code art. 3472 ("The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension.") At that point in time, plaintiffs had the number of days or time remaining until the accrual of the applicable two-year prescriptive period, i.e., between August 25, 2006 and September 1, 2007,[10] to bring suitwell over one calendar year. Therefore, their suit filed just over a month later on June 27, 2008 was timely.

Peremption
I also agree with the opinion in holding Act 802 does not set forth a peremptive period. Regarding this issue, Citizens argues "should this Court concluded that Act 802 did not extend the contractual limitations period, but somehow converted the contractual limitations period into a legislatively-established *743 deadline, it should nevertheless conclude that this deadline was a peremptive period that could not be extended by class action tolling." In support thereof, Citizens emphasizes provisions of Act 802, which states: "any such claim for damages caused by Hurricane Katrina shall be instituted on or before August 30, 2007, and any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date." They assert the words "forever barred" clearly provide for the extinguishment of a right upon the expiration of the extended contractual deadline, i.e., a peremptive period.
However, the ability of the parties to contract to a later date renders the provision non-peremptive because peremption the period of time fixed by law for the existence of a rightmay not be renounced, interrupted, or suspended. La. Civ.Code arts. 3458 and 3461. "Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. Civ.Code art. 3458. Because the parties could extend the existence of the right and time period for filing suit by contract, which they did in this case, the time period set forth by the Legislature in Act 802 cannot, therefore, be peremptive.

The Insurance Code
In the alternative, I find Citizens cannot prevail because the purported prescription-shortening provision in the parties' contract does not meet the strict requirements of the Insurance Code.
Former La.Rev.Stat. § 22:629(A)(3)[11] permits parties to contractually shorten the ten-year prescriptive period in certain kinds of insurance contracts:
No insurance contract [shall be] delivered or issued for delivery in this state.... Limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
La.Rev.Stat. § 22:629(B) provides that any attempt to limit prescription in violation of this rule shall be absolutely void: "Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract."
Section 22:629(A)(3) describes two classes of insurance policiesfor those types of policies listed in La.Rev.Stat. § 22:6(10), (11), (12), or (13), the shortest permissible prescriptive period is "twelve months next after the inception of the loss." For any other type of policy, the shortest permissible prescriptive period is "one year from the time when the cause of action accrues." (Emphases added). Although this distinction may seem arcane, it is entirely crucial to the outcome of this case.
The disputed policy provision states:
Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after date of loss.

(Emphasis added).
This clause satisfies the requirements set forth in the first part of La.Rev.Stat. *744 § 22:629(A)(3), which permits an insurer to limit prescription to "twelve months next after the inception of the loss." Therefore, if plaintiffs' policy is one of the types of insurance policies defined in La.Rev.Stat. § 22:6(10), (11), (12), or (13), the prescription-shortening clause is valid.
The relevant question is whether this policy of insurance is among those types listed in La.Rev.Stat. § 22:6(10), (11), (12), or (13): fire and extended coverage; steam boiler and sprinkler leakage insurance; crop and live stock insurance; and marine and transportation insurance.[12] Plaintiffs' policy is clearly not steam boiler insurance, crop insurance, or marine and transportation insurance. Whether it qualifies as "fire and extended coverage" is a closer question. Plaintiffs' policy is a homeowners' policy, but it does cover against fire damage. This Court has held that, although homeowners' insurance includes coverage against fire and related damages, they are nonetheless two separate types of insurance and a legislative reference to "fire insurance" does not include homeowners' insurance. Landry v. La. Citizens Property Ins., 2007-1907 (La.5/21/08), 983 So.2d 66, 75 n. 10 ("a fire policy, even if it includes coverage for perils other than fire as allowed by La. R.S. 22:691(E), is entirely distinct from a homeowners' policy.") Defendant specifically argues that plaintiffs' insurance is homeowner's insurance, and not fire insurance.[13] This is a judicial admission that the policy is one of homeowner's insurance, not fire insurance, and thus not one of the types of policies listed in La.Rev.Stat. § 22:6(10), (11), (12), or (13).[14] Therefore, the Insurance Code, as it existed in 2005, requires any contractual limitation of prescription to give the insured at least one year to sue, starting from the "time when the cause of action accrues." La.Rev.Stat. § 22:629(A)(3).
Plaintiffs' claim arises in part out of La.Rev.Stat. § 22:1220,[15] which states that an insurer breaches its duty of good faith and fair dealing by "Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." (Emphasis added). A cause of action under § 22:1220 therefore cannot arise until at least sixty days after the date of the loss.
Plaintiffs, by law, must have one year from the date the cause of action accrues to file suit. Under defendant's policy, plaintiffs would have at most ten months from the date the cause of action accrues to file suit. This purported prescription limitation provision is therefore void under La.Rev.Stat. § 22:629(B), and plaintiffs' suit was timely.
WEIMER, J., concurring
I concur in the result and write separately to explain why I believe that result is correct.
*745 Upon the filing of a class action petition, liberative prescription on the claims arising out of the transaction or occurrences described in the petition is suspended as to all members of the class defined or described therein. La. C.C.P. art. 596. Liberative prescription is, by definition, "a mode of barring actions as a result of inaction for a period of time." La. C.C. art. 3447. The insurance policy at issue in this case contains a provision which states: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." The defendant, Louisiana Citizens, maintains that although its policy language has the effect of "barring actions as a result of inaction for a period of time," the language does not actually provide for liberative prescription because, pursuant to La. C.C. art. 3457, "[t]here is no prescription other than that established by legislation," and the language in its policy that sets forth the time period for bringing an action is not established by legislation, but by contract. According to Louisiana Citizens, contractual limitation periods such as those in its policy are not subject to the provisions of La. C.C.P. art. 596 or, for that matter, any other codal or statutory provisions governing the running of prescription, because such periods are not, strictly speaking, "prescriptive" periods but substantive provisions of the insurance contract.
In support of its argument, Louisiana Citizens cites a line of cases, dating from Edson v. Merchants' Mutual Ins. Co., 35 La. Ann. 353 (1883), which uphold the validity of stipulations in insurance policies which limit the time period in which actions for claims thereunder may be brought. Among the cases cited is Tracy v. Queen City Fire Ins. Co., 132 La. 610, 61 So. 687 (1913), a case which is particularly instructive with respect to the issue presented here.
In Tracy, the court was confronted with a policy of fire insurance which contained the following stipulation: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law ... unless commenced within twelve months next after the fire." Tracy, 132 La. at 611, 61 So. at 687. A suit on the policy was filed within four months of the fire, but was dismissed on an exception of jurisdiction ratione personae. More than one year after the fire, a second suit was filed. The defendant insurer filed an exception of prescription, arguing that because the prescriptive period was contractual and not statutory, the statutory rule allowing for interruption of prescription did not apply and, thus, prescription was not interrupted by the earlier filed suit.
The court, citing Edson and the U.S. Supreme Court case on which Edson relied, Riddlesbarger v. Hartford Ins. Co., 74 U.S. 386, 19 L.Ed. 257, 7 Wall. 386 (1868), decreed as "settled" law the proposition that (1) stipulations in insurance policies limiting the time within which actions for claims thereunder may be filed are both valid and legal; (2) such stipulations are the law which the parties have made for themselves and by which their rights and obligations must be measured; and (3) since the rights of the parties flow from the contract, and not statute, the laws that apply to statutory limitations have no application. Tracy, 132 La. at 611-12, 61 So. at 687. Nevertheless, the court pointed out that an exception to this "settled" law arises when the limitation period in the contract is one prescribed by law. Tracy, 132 La. at 613, 61 So. at 687. Drawing from Hamilton v. Royal Ins. Company of Liverpool, 156 N.Y. 327, 50 N.E. 863 (1898), the Tracy court held that because Louisiana has a statute requiring all fire insurance policies written in this state to conform to the New York standard *746 form fire insurance policy and this form policy contains a one-year limitation period, the one-year limitation is not a contractual limitation in the sense of the Riddlesbarger-Edson line of cases, but a statutory prescription, subject to the general rules of prescription set forth in the Louisiana Civil Code. The court reasoned:
Where the law directly or indirectly prescribes a limitation of actions, in logic and reason, such limitation should be controlled and governed by the general provisions of the law relating to the subject. In all statutes of limitations, there are exceptions in favor of a certain class of persons, such as minors and interdicts, and provisions relating to the interruption of the current prescription by acknowledgment, judicial demand, etc. Where, as in the case at bar, the law prescribes the limitation, and the parties cannot help themselves, there is no good reason in law or in equity for not applying the general rules of prescription laid down in the Civil Code, one of which provides that citation shall interrupt prescription, "whether the suit has been brought before a court of competent jurisdiction or not." ... [Emphasis added.]
Tracy, 132 La. at 614, 61 So. at 687.
I believe the logic and rule of the Tracy decision applies to the instant case. On the effective date of the policy at issue, two provisions of law set the perimeters of the applicable prescriptive period: La. C.C. art. 3499, which provides that an action on a contract is a personal one, subject to a liberative prescription of ten years; and La. R.S. 22:629(A)(3) which, at the time, provided that no insurance contract issued for delivery in this state shall contain any stipulation limiting the right of action against an insurer to a period of less than twelve months after the inception of the loss.[1] By virtue of these provisions, the law prescribed a limitation period of no less than one year and not greater than ten years. As in Tracy, the law at least indirectly, if not directly, prescribed a limitation period from which the parties were not free to deviate. While the parties could certainly contract for a limitation period anywhere in the one-year to ten-year range, that period was nevertheless one established by statute. Given this predicate, as in Tracy, there is no good reason in law or equity for not applying the general codal or statutory rules of prescription, including the rule of La. C.C.P. art. 596 providing for suspension upon the filing of a class action petition.[2]
Further, to the extent Louisiana Citizens attempts to assert the contractual nature of its agreement to circumvent the application of the general codal and statutory rules of prescription, it runs afoul of La. C.C. art. 3471. That article clearly circumscribes the limits of any contractual agreement attempting to incorporate a limitation period different from that established by law. Louisiana C.C. art. 3471 states:
A juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null.
In this case, Louisiana Citizens argues that its contractual limitation period is not, *747 strictly speaking, a prescriptive period because it is a period imposed by contract and not by law and, thus, the general rules of prescription do not apply. However, to the extent this argument implies that parties are free to contractually "opt out" of prescription, it runs counter to the clear pronouncement of La. C.C. art. 3471 that parties to a juridical act cannot exclude prescription. And, to the extent the limitation periods in the insurance contract purports to exclude the general codal and statutory rules governing interruption and suspension of prescription, while maintaining the basic time period that would otherwise apply, it renders the requirements of prescription more onerous, again in contravention of La. C.C. art. 3471.
As to Louisiana Citizens' alternative argument, that to the extent 2006 La. Acts, Nos. 739 and 802 can be construed to have converted the contractual limitation period of the policy into a statutorily imposed liberative prescription, the Acts establish and impose upon the insurance contract a peremptive period, not subject to interruption or suspension, I find the majority's resolution of this argument persuasive. Because both Acts contain provisions which allow the time limitations in the Acts to be extended by contract,[3] those limitations cannot by definition be peremptive. See, La. C.C. art. 3461 ("Peremption may not be renounced, interrupted, or suspended.")
GUIDRY, Justice, dissents and assigns reasons.
For the following reasons, I conclude that the institution of the class action suits in Buxton v. Louisiana Citizens Property Ins. Co, 06-8341, Civil District Court, Parish of Orleans and Chalona v. Louisiana Citizens Property Insurance Corporation, 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494 did not interrupt or suspend the contractual limitation for the filing of the plaintiffs' suit.
La. C.C.P. art. 596 clearly provides the filing of a class action suit operates only to suspend liberative prescription, which is a period of time fixed by law for the exercise of a right. State, through Dept. of Corrections v. McInnis Bros. Constr., 97-0742, p. 2 (La.10/21/97), 701 So.2d 939, 940. The liberative prescriptive period for a contract action is ten years. La. C.C. art. 3499. Nonetheless, the law permits the parties to contractually agree to a shorter period of time of not less than twelve months to institute suit. La. R.S. 22:629(A)(3) (2005), re-codified in 2009 as La. R.S. 22:868. In the instant insurance matter, the parties contracted for a one-year limitation for the filing of suit. It is undisputed a contractual limitation is peremptive in nature and thereby not susceptible to suspension or interruption. Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 723 (La.1986) ("[N]othing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation."). Since La. C.C.P. art. 596 does not reference the suspension of contractual limitations, it becomes inapplicable under the facts.
Moreover, the agreed term for a one-year deadline for the institution of suit was *748 binding between the parties and has the effect of law. La. C.C. art. 1983. This term was extended for an additional one year through Acts 739 and 802 by the Louisiana Legislature following Hurricanes Katrina and Rita. However, this Court concluded the limited impairment of the parties' right to contract was reasonable given the need to protect the interests of Louisiana citizens in the aftermath of the destruction left in the wake of the storms. State v. All Property and Casualty Insurance Carriers, 06-2030 (La.8/25/06), 937 So.2d 313. Notwithstanding, to allow the parties' contract rights to be further impaired is violative of both federal and state law. U.S. CONST. Art. I, § 10, cl. 1; LSA CONST. Art. I, § 23.
Accordingly, I respectfully dissent.
CLARK, Justice, concurring for reasons assigned by Justice Weimer.
I concur in the result for the reasons assigned by Justice Weimer.
NOTES
[1] Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Cathrine D. Kimball.
[2] 2006 Act No. 739 was enacted by the Legislature adding LSA-R.S. 22:658.3 (now LSA-R.S. 22:1894), which provides in pertinent part:

A. Notwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to a homeowners' insurance policy, . . . and resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.
Act 739 was signed by the Governor on June 29, 2006, and became effective on that date.
[3] This Court refuted the insurance industry's argument that the prescriptive period provided in an insurance policy cannot be altered by finding that "the prescriptive periods provided for in Acts 739 and 802 are constitutional." State v. All Property and Casualty Ins. Carriers Authorized and Licensed to do Business in the State of Louisiana, 06-2030 (La.8/25/06), 937 So.2d 313, 330. Specifically, this Court noted Section 2 of Act 802, which provides in pertinent part that Louisiana Legislature established:

an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer on any homeowners' insurance policy . . . when such loss or damage was caused by or as a result of Hurricane Katrina or Hurricane Rita, or both. Accordingly, any such claim for damages caused by Hurricane Katrina shall be instituted on or before August 30, 2007, and any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date. . . .
Id. at 321. Act 802 was signed by the Governor on June 30, 2006, and became effective on that date.
In other words, at the time of Hurricane Katrina, Louisiana law prohibited insurers from including suit limitations periods shorter than 12 months, LSA-R.S. 22:629(A)(3)(2005), and prohibited parties from agreeing to a limitations period longer than the ten (10) year liberative prescriptive period. LSA-C.C. arts. 3471-3499. LSA-R.S. 22:658.3 (now renumbered LSA-R.S. 22:1894) extended the period to September 1, 2007 unless a greater time period was otherwise provided by law or by contract.
[4] The creation of prescriptive periods is exclusively a legislative task, and the state is afforded broad discretion in determining the time within which a claim must be brought. Marc S. Firestone, Prescription-What You Don't Know Can Hurt You-Louisiana Adheres To A Three Year Limit On The Discovery Rule, 58 Tul. L.Rev. 1547, 1549 (June 1984).
[5] It is well settled that liberative prescription may be "expressly or tacitly renounced only after it has accrued." LSA-C.C. Arts. 3449, 3450; Huckabee v. Sunshine Homes, 26,294 (La.App. 2 Cir. 12/7/94), 647 So.2d 409, 413.
[6] Comment "b" to LSA-C.C. art. 3463 provides:

According to Louisiana decisions, after being interrupted by the filing of suit in a competent court, prescription is suspended while the suit is pending. See Marshall v. Southern Farm Bureau Casualty Company, 204 So.2d 665 (La.App. 3 Cir. 1967); Hebert v. Cournoyer Oldsmobile-Cadillac-G.M.C., Inc., 405 So.2d 359 (La.App. 4 Cir. 1981). However, it is preferable to speak of a continuous interruption rather than a suspension. See Dainow, The Work of the Louisiana Appellate Courts for the 1967-68 Term, 29 La.L.Rev. 230 (1969).
[7] LSA-C.C. art. 1906 states that "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."
[8] These facts are spelled out in Pitts, supra.
[9] The Chalona class was certified and defined as follows:

All present or past insureds of Louisiana LCPIC Property Insurance Corporation a/k/a LOUISIANA LCPIC FAIR PLAN, hereinafter referred to as "LCPIC" who, on or after August 29, 2005, provided notification of loss resulting from Hurricane Katrina and/or Rita to LCPIC, notwithstanding whether loss adjustment was initiated within thirty (30) days after notification of loss, whose claims were not followed by a written offer to settle within thirty (30) days after receipt of satisfactory proof of loss.
[10] This Court noted that "the action against the surety on the bond must, like all lien claims on the project, be brought within one year from the date of recordation of acceptance of the work by the governing authority." E.L. Burns at 299; LSA-R.S. 38:2247 (1950).
[1] According to our civilian tradition, prescription is a means of acquiring real rights or of losing certain rights as the result of the passage of time. MARJORIE NIESET NEUFELD PRESCRIPTION AND PEREMPTIONTHE 1982 REVISION OF THE LOUISIANA CIVIL CODE 58 TUL. L.REV. 593, 593 (November 1983)(citing to Baudry-Lacantinerie & Tissier as well as Aubry & Rau). "This is a principle of social utility aimed at simplifying the proof of ownership and maintaining social order." Id. The creation of prescriptive periods is exclusively a legislative task, and the state is afforded broad discretion in determining the time within which a claim must be brought. MARC S. FIRESTONE, PRESCRIPTIONWHAT YOU DON'T KNOW CAN HURT YOULOUISIANA ADHERES TO A THREE YEAR LIMIT ON THE DISCOVERY RULE 58 TUL. L.REV. 1547, 1549 (June 1984). "The codal articles on prescription appear at the end of both the French and Louisiana Civil Code because prescription consolidates all rights created by the preceding titles." Id.
[2] This provision has been redesignated La. Rev.Stat. 22:1894.
[3] The 1982 Revision of the Civil Code Articles on Prescription sought to clarify our law in the area of prescription by setting out and distinguishing the various types of prescription and by delineating the general operation and effect of their principles. FIRESTONE, supra. This was done in accordance with the purpose of updating our Civil Code in conformance with traditional civilian doctrine and Louisiana jurisprudence. Id. It is these revised codal provisions that govern the resolution of the issue in this case.
[4] This decision is vitally important to an understanding of our principles of prescription as they stand today. It is in this decision that a majority of this Court, led by Justice Marcus, examine and strike down a contractual limitation or rather expansion of prescription as violative of our codal provisions prohibiting the anticipatory renunciation of prescription. E.L. Burns, 302 So.2d at 301-302. The dissenting Justices, lead by Justice Tate, defend the "contractual provision freely entered into in return for a payment of a premium" and cite French sources emphasizing contractual freedom in such situations as "[t]here is nothing in public policy against individual agreements about delays in the exercise of an action or the suspension of the prescription of a certain right for a certain period of time." Id. at 302. Although Justice Marcus's position is a proper civilian resolution of the issue, Justice Tate's position was well-supported by over a century's worth of this Court's jurisprudence, which looked to common law and United States Supreme Court precedent, namely Riddlesbarger v. Hartford Ins. Co., 74 U.S. 386, 389-90, 7 Wall. 386, 19 L.Ed. 257 (1868), as authority for the "contractual freedom" position. See Blanks v. Hibernia Insurance Company, 36 La.Ann. 599 (1884); Edson v. Merchants' Mutual Insurance Company, 35 La. Ann. 353 (1883); and Carraway v. Merchants' Mutual Insurance Company, 26 La. Ann. 298 (1874). I note, however, the provisions of La. Civ.Code art. 3471 were not codified until the 1982 Revision, and although according to the comments it did not change the law, I find it is important to recognize this Court did not have the benefit of this pronouncement prior thereto. Simply put, I find this provision codifies Justice Marcus's civilian interpretation, which interpretation constitutes a departure from the established jurisprudence and did change the law regarding the freedom of parties to contract to what seems to me, given Justice Tate's rhetoric and the language of this Court's earlier cases, to have been non-legislatively enacted/contractual prescriptive time limitations. Interestingly, more in keeping with the common law doctrine of laches than our civilian principles of prescription, these contractual limitations were upheld if "the shortened period [was] reasonable." See A. Z., NOTE: INSURANCEVALIDITY OF CONTRACTUAL LIMITATION OF PRESCRIPTIVE PERIODARTICLE 3460, LOUISIANA CIVIL CODE OF 1870, 16 TUL. L.REV. 625, 627 (1942). Note, however, there is no place for the common law doctrine of laches under our legal system. See La. Civ.Code art. 3457, Revision Comments-1982, Cmt. (b).
[5] Therefore, it logically follows that, if a contract seeks to limit prescription or the prescribed period without legislative authority to do so, the time limitation so contracted is not a prescriptive period established by the legislature and in effect seeks to exclude the applicable prescriptive period, i.e., prescription, or at the very least renders the requirements of prescription more onerous. Consequently, the time limitation is not enforceable as a matter of law. Such a conclusion comparts with Justice Marcus's civilian interpretation as well as with the Greek codal provision from which our present provision was derived. See Article 275 of the Greek Civil Code which provides: "A juridical act purporting to exclude prescription, or fixing a shorter or longer period than that provided by law, or making the conditions or prescription more or less onerous, is null."

Unfortunately, earlier cases rendered by this Court upholding "contractual prescriptive" periods, Blanks v. Hibernia Insurance Company, 36 La.Ann. 599 (1884); Edson v. Merchants' Mutual Insurance Company, 35 La. Ann. 353 (1883); and Carraway v. Merchants' Mutual Insurance Company, 26 La. Ann. 298 (1874), cannot, therefore, stand as a matter of law under the revision. So too must fall Justice Tate's well-reasoned and well-supported position in his dissent in E.L. Burns, joined by Justice Calogero, advocating the freedom of contract and warning of the danger of "classifying any agreement limiting the time within which to sue under a contract as an agreement either to renounce prescription or somehow to limit it." 302 So.2d at 303. However, as I noted above and as discussed in detail infra, the time limitation contained in the policy at issue is made in accordance with statutory authority, and so, this issue need not be addressed in the resolution of this case.
[6] Earlier cases rendered by this Court held suit-limitation provisions contained in fire and windstorm policies, which were strikingly similar to the one at issue herein, were "prescribed by law" in that the provisions were inserted in the policy by command of statute "[i]t was not, however, made a part of the policy by virtue of any agreement between the parties.... The parties had no volition in the matter. They could have provided no different period of limitation. The law establishes the period of limitation and forbids the parties from disregarding it...." Tracy v. Queen City Fire Ins. Co., 132 La. 610, 613, 61 So. 687, 688 (1913) ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law of law [sic] or until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."); see also, Finkelstein v. American Ins. Co. of Newark, N.J., 222 La. 516, 521, 62 So.2d 820, 821 ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.") and Gremillion v. Travelers Indemnity Company, 256 La. 974, 985, 240 So.2d 727, 731 (1970) (overruling Finkelstein and re-interpreting the statutorily mandated limitation provision; noting "the limit of twelve months is not in the language of the insurance company; it is the language of the Legislature and expressed in words which the statute supra requires to be inserted in the policy, word for word, line for line, number for number").
[7] Interestingly, this case allows the Court to conclusively answer the question posed by Justice Tate in his E.L. Burns dissent: "is a requirement in a property-loss insurance contract that suit must be brought within a year of the loss an infringement upon the ordinary right of a creditor to sue upon a written obligation for a longer period?" It is an infringement, but one by operation of law enacted for the protection of public interests namely in insurance cases the prevention of the need to adjudicate stale claims, which may be insusceptible of proof brought many years after the allegedly wrongful act or loss. More importantly, the right of the creditor arguably infringed upon is granted by law subject to limitations prescribed by the Legislature: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." La. Civ.Code art. 3499 (emphasis added).
[8] See Pitts v. Louisiana Citizens Property Ins. Corp., 08-1024, p. 2 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, 108, as authority for all information contained herein concerning these two class action suits.
[9] Act 802 was in effect at the time the class action petitions were filed, having become effective on June 30, 2006, by signature of the Governor. See All Property and Cas. Ins. Carriers, 06-2030 at p. 9, 937 So.2d at 321.
[10] Actually, based on the "voluntarily extended" time limitation granted by Citizens, the parties had the number of days remaining between August 25, 2006the day on which suspension commencedand September 4, 2007the day on which prescription would have ceased to run had the class action petition not been filedwithin which to bring suit.
[11] La.Rev.Stat. § 22:629 was in effect during 2005. The statute has since been renumbered and slightly modified, and is now codified as La.Rev.Stat. § 22:868.
[12] La.Rev.Stat. § 22:6 has since been renumbered and amended as La.Rev.Stat. § 22:47.
[13] See Defendant's reply brief at page 5, footnote 2.
[14] Notably, La.Rev.Stat. § 22:629 was amended in 2007 to expressly include homeowners' insurance among the enumerated types of insurance. This implies that, in 2005, homeowners' policies were not covered by § 22:629.
[15] Now codified as La.Rev.Stat. § 22:1973. Plaintiffs also bring similar claims under former La.Rev.Stat. § 22:658, which requires an insurance company to send an adjustor within 30 days of a catastrophic loss claim. Under both § 22:658 and § 22:1220, the cause of action does not arise until some time after the date of loss.
[1] La. R.S. 22:629 was amended by 2007 La. Acts, No. 43 and then re-numbered pursuant to 2008 La. Acts, No. 415. It now appears as La. R.S. 22:868.
[2] This same analysis applies to the one-year extension Louisiana Citizens voluntarily afforded to its policyholders on the eve of the passage of 2006 La. Acts, Nos. 739 and 802. The extension, like the original twelve-month period, was one established pursuant to code or statute.
[3] 2006 La. Acts, No. 739, currently appearing as La. R.S. 22:1894(A), gives Hurricane Katrina claimants "through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claims is otherwise provided by law or by contract." (Emphasis added.)

Pursuant to 2006 La. Acts, No. 802, Hurricane Katrina claimants are required to institute claims "on or before August 30, 2007, and any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date." (Emphasis added.)